# IN THE U.S. DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| Timothy McGovern, | ) | Case No.: 3:18CV2506 |
| | ) | |
| Plaintiff, | ) | Judge Jeffrey Helmick |
| | ) | |
| | ) | **DEFENDANT LAMONTE HOBBS'** |
| v. | ) | **OPPOSITION TO PLAINTIFF'S** |
| | ) | **MOTION FOR PARTIAL SUMMARY** |
| Lucas County, Ohio et al., | ) | **JUDGMENT** |
| | ) | |
| Defendants. | ) | Peter N. Lavalette (0063542) |
| | ) | Kayla L. Henderson (0096072) |
| | ) | Robison, Curphey & O'Connell |
| | ) | Four SeaGate, Ninth Floor |
| | ) | Toledo, OH 43604 |
| | ) | (419) 249-7900 |
| | ) | (419) 249-7911 – facsimile |
| | ) | plavalette@rcolaw.com |
| | ) | khenderson@rcolaw.com |
| | ) | |
| | ) | Attorneys for Defendant Hobbs |

This Court should deny Plaintiff's Motion for Partial Summary Judgment for three reasons. First, the record of *State of Ohio v. Hobbs*, Lucas County Common Pleas Case No. CR-2017-3023 does not support a finding of liability against former corrections officer LaMonte Hobbs ("Hobbs") in this civil suit on the basis of collateral estoppel because issues relevant to his immunity defenses under state and federal law were not essential to his state law criminal conviction for first-degree misdemeanor assault. This Court must first adjudicate determinative issues involved in applying federal qualified immunity and Ohio's political subdivision immunity against civil claims before the Court can impose liability. These immunity analyses, particularly involving Mr. McGovern's ("McGovern" or "Plaintiff") conduct throughout booking, the nature of his injury, and Defendant Hobbs' specific mental state, were not essential to Hobbs' conviction in *State of Ohio v. Hobbs*.

1

Second, this Court is not required to apply collateral estoppel. Instead, to prevent a violation of Hobbs' due process rights, the Court should exercise its discretion and allow the parties to fully and fairly litigate the claims Plaintiff brings against them. The Court will be applying a different standard in its application of qualified and statutory immunity, considering many facts that were outside the scope of the narrow elements of criminal assault in the state case. Therefore, the Court should decline to apply collateral estoppel to impose liability.

Finally, Plaintiff's Amended Complaint fails to specifically plead a claim against Hobbs for excessive force under the Fourth and Fourteenth Amendment in relation to his contact with McGovern, as argued in Plaintiff's Motion for Partial Summary Judgment. Rather, the Complaint alleges a claim against Hobbs, and other individual Defendants, for failing to intervene in Defendant Grant's use of force. Therefore, the Motion should also fail as it relates to Plaintiff's federal claims.

For these reasons, more fully explained the accompanying Memorandum, this Court must deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

/s/Kayla L. Henderson
Peter N. Lavalette (0063542)
Kayla L. Henderson (0096072)
Robison, Curphey & O'Connell
Four SeaGate, Ninth Floor
Toledo, OH 43604
(419) 249-7900
(419) 249-7911 – facsimile

Attorneys for Defendant Hobbs

**MEMORANDUM IN OPPOSITION**

I.   **BACKGROUND**

   A.   **Incident at the Lucas County Corrections Center**

On November 10, 2017, law enforcement officers brought Plaintiff Timothy McGovern to the Lucas County jail following his arrest for drunk driving and menacing police officers.[1] (GB000311). Due to Mr. McGovern's admittedly uncooperative behavior from his arrest through his arrival at booking in the jail, he did not finish the booking process. (GB000312, 326). Skipping the normal phone call and photo for his booking sheet, he was instead placed directly in the West D tank, with other intoxicated inmates, following initial intake and dress out. (GB000312; GB000404).

McGovern, while in the tank, approached Hobbs in the doorway while Hobbs spoke to another detainee being placed in the tank. (GB000329). McGovern asked Hobbs to use a telephone because he was not able to make his initial call due to his shortened booking process. Hobbs told McGovern to use the phone on the wall of the tank. (GB000329). The two engaged in back-and-forth regarding use of the phone, and McGovern flipped his middle finger to Defendant Hobbs and said, "fuck you." (GB000330). Hobbs also heard McGovern use a racial slur, although this is disputed in the criminal case testimony. (GB000330; GB000433). What is undisputed is the fact that there were several other African-American inmates in the tank with McGovern. (GB000444).

McGovern immediately turned around from facing Hobbs in the doorway and began to walk away. (GB000330). Because of his disruptive, disrespectful, and uncooperative behavior, and in light of McGovern's similar conduct throughout the night, Hobbs exercised his discretion given to a correctional officer to maintain safety and order, and made a snap decision to remove McGovern from the tank, that had several other African-American inmates, into a single cell across the hall. He

---

[1] Plaintiff's Motion relies on the record evidence of *State of Ohio v. Hobbs*, Lucas County Common Pleas Case No. CR-2017-3023 as the basis for his factual recitation; Defendant will use the same record solely for purposes of opposing the Motion.

did so to without requesting sergeant approval to prevent further and immediate disruption in the tank. He did so because it was within his discretion when an inmate is uncooperative, disruptive, and disrespectful. (GB000434). To effectuate the removal, Hobbs grabbed McGovern's shirt collar and pulled McGovern towards him. (GB000434). While McGovern characterizes the next step of the incident as a chokehold,[2] the trial court expressly stated Hobbs did not choke McGovern upon a careful review of the video, both in normal speed and in frame-by-frame viewing. (GB000538). Rather, the two men lost their footing, and ended up falling on the floor in the doorway between the tank and open hallway, with Hobbs' arm around McGovern's upper body. (GB000435, 538).

At this point, several other correctional officers—including Defendants Gumpf, Meyers, Grant, and Watkins—arrived at the doorway of the tank upon hearing the commotion.[3] (GB000436). Defendants Meyers and Grant took control of McGovern, with Defendant Meyers placing the handcuffs on him while Grant held McGovern in place. (GB000368). In the video, the officers are heard yelling at McGovern to stop resisting as they attempted to put his hands behind his back to place handcuffs. (GB000332, 335). Defendants Meyers and Grant then picked up McGovern and escorted him into the single cell. (GB000368). There, a nurse at the jail later examined McGovern, and he did not need further medical treatment. (GB000402).

**B.    Hobbs' Criminal Trial**

As a result of the encounter with Plaintiff, Hobbs was charged on November 21, 2017 for first-degree misdemeanor assault under R.C. § 2903.13(A) and (C)(1). That provision states:

> (A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn. *** (C)(1) Whoever violates this section is guilty of assault, *** a misdemeanor of the first degree.

---

[2] (*See* Doc. 4, ¶ 21). Notably, however, the prosecution in *State v. Hobbs* did not reference or allege choking as part of the assault, despite Plaintiff's attempts to paint the interaction as "choking" in the current suit. (GB000524); (Doc. 4, First Am. Compl., ¶ 15-21). The trial court expressly found the conduct did not constitute choking. (GB000538) ("You clearly did not engage with choking him, and that was not something that was put before the Court.").
[3] The prosecution also stated that the conduct occurring once the two men hit the floor was <u>not</u> considered part of the criminal assault. (GB000524-25). The Court agreed. (GB000537).

R.C. 2903.13. Following a three-day bench trial, Hobbs was convicted of first-degree misdemeanor assault. *See* Lucas County Common Pleas Case No. CR-2017-3023. Several witnesses testified at the criminal trial, including McGovern, Hobbs and Gumpf, and Lucas County employees Todd Reed, Dave Carter, and Damon Smith.

In addition to the testimony, the record included State's Exhibits 1-7. Five Exhibits were photographs of Mr. McGovern's alleged injuries. State Exhibit 6 was a copy of the Corrections Officer Report authored by Defendant Hobbs. State Exhibit 7 was a copy of the video of the incident.

Following a bench trial, the trial court articulated its findings cautiously, limiting them to only the necessary elements for a conviction for the crime charged:

> *** I know that this case is slightly different in the sense that, Mr. Hobbs, you have been a law-abiding citizen. **This was in the course of your employment**, and certainly, from the difference between maybe what was culture, policy, how things occur in that everyday situation, the Court is not – not naïve to the fact that the population that you are working with in a jail setting is, and often in booking, is often a very, very, difficult population.     *     *     *
> And, obviously, we are inundated daily with much more egregious acts of aggression and violence to inmates or people being arrested, and the level of what the Court saw, *** we didn't have kicking, we didn't have punching, we didn't have that next level of what we attach to assaultive behavior. **But the elements the Court has to look at is it is not just how bad it got, it is just, ultimately, the elements that meet the burden for assault**.

(GB000536-37) (emphasis added).

The court concluded that Hobbs' contact with McGovern was not in accordance with proper policies. (GB000537). In interpreting which actions constituted the assault, the court expressly stopped short of any finding that McGovern's head hit the doorjamb immediately after the grab, noting that the video shows Hobbs and McGovern losing their balance and falling while McGovern was under his control. (GB000538). The court expressly stated that Hobbs did not choke McGovern. (GB000538). The court declined to measure the severity of McGovern's injuries. (GB000538-39). In reaching its decision, the court did not refer to, nor base any portion of its

3

decision of Hobbs' guilt on, the reports Sergeant Gumpf and Hobbs wrote on their next shift, but instead relied solely on the video evidence. (GB000438).

Hobbs appealed his conviction to the Ohio Sixth District Court of Appeals, Case No. CL-2018-1165. The Court of Appeals dismissed the appeal on December 13, 2019 because the issues Hobbs presented were moot based on his completion of his sentence, including required community service. (Certified Copy of Order, attached as Ex. 1).[4]

### C. Current Civil Rights Suit – Procedural History

Plaintiff filed a First Amended Complaint on October 30, 2018, asserting claims under 42 U.S.C. § 1983, and state law claims of assault and battery, and negligence. Doc. 4, ¶ 48-53. Plaintiff brings the following claims:

(1) "First Cause of Action – 42 U.S.C. § 1983": Failure to intervene under 42 U.S.C. § 1983 against Hobbs, Meyers, Watkins and Gumpf for Defendant Grant's use of force while McGovern was on the floor. (Doc. 4, ¶ 48-49). Plaintiff also claims the County and Sheriff Tharp are liable for this conduct through its policies and ratification. (Doc. 4, ¶ 50).

(2) "Second Cause of Action – Assault and Battery": Torts of assault and battery against Hobbs and Grant for maliciously causing harmful or offensive contact with Plaintiff, causing harm. (Doc. 4, ¶ 51).

(3) "Third Cause of Action – Negligence/Recklessness": Hobbs, Meyers, Grant, Watkins, and Gumpf breached their duty of using reasonable care toward Plaintiff and did maliciously or in bad faith or wantonly/willingly. (Doc. 4, ¶ 52-53).

Notably, the Complaint does not allege a specific cause of action against Hobbs for his actions in grabbing the collar of McGovern in his attempt to remove him to the single cell. *Compare* Doc. 4 (Amended Complaint) with Doc. 37 (Motion for Partial Summary Judgment).

---

[4] Hobbs did not file an appeal with the Ohio Supreme Court.

4

Following limited discovery, the court entered a stay to allow a decision on Defendant Hobbs' criminal action. (Doc. 41). The court lifted the stay. (Doc. 43).

## II.   LAW AND ANALYSIS

Because this is a civil case, asserting claims under both 42 U.S.C. § 1983 and state tort law, there are issues that are determinative of Hobbs' liability that were not essential to the Hobbs' state criminal conviction. Proper consideration of qualified and statutory immunity defenses to Plaintiff's constitutional and related state law tort claims requires an analysis of a broader set of facts, under a different standard, to decide if the conduct at issue crossed a constitutional line.[5]

Moreover, because of the inherent differences between this federal civil rights case and the misdemeanor criminal assault case, Hobbs did not have the same incentives to litigate the issues that are determinative in this case, as qualified and statutory immunity are not defenses to criminal assault. Using collateral estoppel to prevent him from litigating this case fully would violate his due process rights.

Finally, merits aside, this Court cannot grant summary judgment on Plaintiff's excessive force claim against Hobbs for his conduct in grabbing McGovern's collar because Plaintiff has not even asserted that claim in his Amended Complaint.

For these reasons, this Court should deny Plaintiff's Motion for Partial Summary Judgment.

### A.   Standard of Review

"A moving party is entitled to summary judgment if the pleadings, the discovery and the disclosure materials on file, and any affidavits 'show [ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir.2013) (quoting Fed.R.Civ.P. 56(a)). "There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. ***

---

[5] Indeed, considering the record as a whole, including facts that were outside the scope of the elements of assault, Hobbs is entitled to immunity against the civil suit.

5

We must ultimately decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. In doing so, the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party." *Id.* (internal citations and quotations omitted).

> **B.     Collateral estoppel based on the underlying criminal conviction does not allow this Court to impose civil liability on Hobbs.**

In order for this Court to impose civil liability on Hobbs, the Plaintiff must overcome the barrier of qualified and statutory immunities afforded to Hobbs. The parties in *State v. Hobbs* did not "actually litigate" the issues that are involved in the qualified and statutory immunity analysis, and those issues were not essential to the conviction. The differences in determinative issues between this action and the criminal action therefore prevent this Court from applying collateral estoppel to find Hobbs liable.[6]

> **1.     *Doctrine of collateral estoppel***

Federal courts look to state law to determine whether a state-court judgment should be given preclusive effect in a subsequent § 1983 action. *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir.1999); *Haring v. Prosise*, 462 U.S. 306, 313 (1983); 28 U.S.C. § 1738 (federal courts must give full faith and credit to state court judgments); *Emich Motors Corp. v. Gen Motors Corp.*, 340 U.S. 558, 568-69 (1951) (holding that "plaintiffs are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based").

"Collateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral

---
[6] In fact, the record supports successful application of immunity to bar the civil claims against Hobbs.

6

estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 70 Ohio St.3d 176, 1994-Ohio-358, 637 N.E.2d 917 (1994). "The first prong of this analysis is of course critical: '[c]ollateral estoppel precludes relitigation only when the identical issue was actually decided in the former case.'" *Zulock v. Shures*, 441 Fed.Appx. 294, 304 (6th Cir.2010) (quoting *Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978, 987 (1983)). "Issue preclusion will bar relitigation only when the identical issue was actually decided in the first case, and not simply where an issue could have been decided in the first case." *Id.* "Such estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich*, 340 U.S. at 569.

"The difficult problem, as recognized by the *Emich* Court, is discerning what matters were adjudicated in the antecedent suit. In aid of its determination, the trial court must look to the record, the pleadings, the evidence submitted, the jury instructions, and any opinions of the courts." *Wloszek v. Weston, Hurd, Fallon, Paisley & Howley, LLP*, 8th Dist. Cuyahoga No. 82412, 2004-Ohio-146, ¶ 40.

But, "even when issues have been raised, argued and decided in a prior proceeding, and are therefore preclusive under state law, redetermination of the same issues may nevertheless be warranted if there is reason to doubt the quality, extensiveness or fairness ..." of the state proceeding." *United States v. Couch*, 822 F.Supp. 457, 463 (S.D.Ohio 1993) (quoting *Prosise,* 462 U.S. at 318 (internal quotations and citations omitted)). "As Ohio law recognizes, it would violate due process to assert collateral estoppel against a party who 'had little knowledge or incentive to litigate fully and vigorously in the first action due to the procedural and/or factual circumstances presented therein.'" *Ingram*, 185 F.3d at 593.

Here, Plaintiff cannot prove, as he must, that "the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Ingram*, 185 F.3d at 593 (citing *Goodson,* 443 N.E.2d at 985); *Frank v. Simon*, 6th Dist. Lucas No. L-06-1185, 2007-Ohio-1324, ¶ 13.

7

While some of the basic facts underlying the jail incident were developed in the criminal trial, not <u>all</u> facts that are necessary to resolve the <u>current</u> suit were at issue and essential to the underlying judgment. Therefore, application of collateral estoppel to impose liability on Hobbs for either Plaintiff's state law battery claim, or for Plaintiff's purported claim of excessive force under 42 U.S.C. § 1983, is improper without consideration of his immunities to civil suits.

> 2. *Issues necessary to determine liability in this case were not directly litigated and essential to the judgment in the underlying criminal case.*

      a.    <u>Excessive force claim</u>

This Court cannot apply collateral estoppel to hold Hobbs liable for Plaintiff's purported § 1983 excessive force claim regarding his contact with McGovern because it must determine his entitlement to qualified immunity—which determinative facts were not essential to his conviction. The state court action was concerned with a narrower issue—specifically, whether the state proved the elements of a first-degree misdemeanor assault under R.C. § 2903.13(A) ("No person shall knowingly cause or attempt to cause physical harm to another").[7] Qualified immunity was not raised in state court because it does not afford a defense to the state law criminal assault charge against Hobbs. As Hobbs intends to assert in his own subsequent dispositive motion, the circumstances as laid out in the record of *State v. Hobbs* entitle Hobbs to qualified immunity. Thus, Plaintiff's theory fails as a matter of law.

First, this Court must examine what exactly Plaintiff must prove to prevail on a § 1983 excessive force claim, which ultimately hinges on Hobbs' entitlement to qualified immunity.

"[G]overnment officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Burgess v. Fischer*, 735 F.3d

---

[7] While the burden of prove was higher in the criminal case, the scope of inquiry is broader in this case.

8

462, 472 (6th Cir.2013) (internal quotations omitted). "Once raised, it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity." *Id.* at 473.

"Section 1983 does not confer substantive rights; rather, it is only a means to vindicate rights already conferred by the Constitution or laws of the United States. *** Excessive force claims, however, can be raised under the Fourth, Eighth, and Fourteenth Amendments." *Burgess*, 735 F.3d at 472. While Plaintiff asserts that his excessive force claim is brought under both the Fourth and Fourteenth Amendments, (Doc. 37, PageID #137),[8] the Fourth Amendment standard applies.[9] Therefore, his claim is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015); *Aldini v. Johnson*, 609 F.3d 858, 864-67 (6th Cir.2010); *Burgess v. Fischer*, 735 F.3d 462, 473 (6th Cir.2013).

The Fourth Amendment standard looks at the "reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Burgess*, 735 F.3d at 472. The Supreme Court has laid out non-exclusive objective factors to consider, including:

> the relationship between the need for the use of force and the amount of force used;
> the extent of the plaintiff's injury;
> any effort made by the officer to temper or to limit the amount of force;
> the severity of the security problem at issue;
> the threat reasonably perceived by the officer; and
> whether the plaintiff was actively resisting.

*Kingsley*, 135 S.Ct. at 2473. The standard is not applied "mechanically." *Id.*

In considering the totality of the circumstances, courts recognize "'[r]unning a prison is an inordinately difficult undertaking,' *** and 'safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Kingsley*, 135 S.Ct. at 2474 (internal citations omitted). "The

---

[8] Moreover, as discussed in this Memorandum, Plaintiff fails to actually plead this claim in his Complaint. (Doc. 4).
[9] The incident at the jail occurred while Plaintiff was in the midst of his booking process, following a warrantless arrest and before any probable cause hearing.

9

reasonableness of the defendants' actions are assessed from the perspective of a reasonable officer on the scene, rather than with the advantage of 20/20 hindsight." *Smith v. Erie Cty. Sheriff's Dept.*, N.D.Ohio No. 3:12 CV 1853, 2014 WL 320399, *11, *aff'd,* 603 Fed.Appx. 414 (6th Cir.2015).

Not every application of force triggers a constitutional violation, even if it technically constitutes common-law assault. "In the end, the litmus test is whether, on balance, an act of gratuitous violence has been inflicted so as to cross the *constitutional* line that lies beyond common-law assault." *Degolia v. Kenton Cty.*, 381 F.Supp.3d 740, 756–57 (E.D.Ky.2019) (internal citations and quotations omitted) (emphasis in original). "There is, of course, a *de minimis* level of [force] with which the Constitution is not concerned." *Hanson v. Madison Cty. Detention Ctr.*, 736 Fed.Appx. 521, 530 (6th Cir.2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539, n. 21 (1979)). **"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."** *Id.* **"[T]he constitutional floor against excessive force is not consonant with common-law assault. *** That is, even where a suspect does not actively resist, the use of force must cross the *constitutional* line."** *Id.* (emphasis added).

As the Sixth Circuit has recognized, "[a]ctive resistance to an officer's command can legitimize even higher levels of force, such as an officer's use of a Taser. Such resistance can take the form of 'verbal hostility' *or* 'a deliberate act of defiance." *Hanson*, 736 Fed.Appx. at 531. (emphasis in original) (quoting *Eldridge v. City of Warren*, 533 Fed.Appx. 529, 534–35 (6th Cir. 2013))." "At some point, in response to defiance and belligerence, officers are entitled to preserve internal order and discipline." *Id.* at 531–32 (internal quotation omitted) (holding booking officer was not objectively unreasonable, albeit not demonstrating the most patience or finest of judgment, when he shoved plaintiff against a wall, where plaintiff had been belligerent, profane and uncooperative during booking process and no injury was alleged to result from the initial shove). *See also Lee v. City of Norwalk, Ohio*, 529 Fed.Appx. 778, 783 (6th Cir.2013) (officer did not use excessive force where

10

plaintiff was belligerent and confrontational throughout her time in booking when force was a mild shove and grabbing shirt sleeves to put plaintiff in her chair, along with pressure on her neck to prevent swinging).

Here, these critical factors in a qualified immunity analysis were <u>not</u> considered by the state court as part of Hobbs' criminal conviction because they were not essential to his conviction given the narrow elements the State needed to prove. Plaintiff's verbal hostility and disrespectful gesture presented a threat to the tank's stability, which contained several other inmates. Whether McGovern—who is Caucasian—used racial slur, and the effect that would have had on a tank disruption, let alone McGovern's own safety, in light of the African-American inmate population is a relevant consideration in the qualified immunity analysis. Moreover, McGovern was ordered to stop resisting during the incident, further indication of his uncooperative behavior. (GB000332, 335).

Plaintiff's conduct leading up to the altercation is also highly relevant in the immunity context—unlike in the criminal trial, which focused exclusively on the collar-grab. McGovern's admittedly uncooperative behavior during his stay in booking and the charges on which he was brought in on (which included menacing police officers) are considerations for this Court, even though they were not <u>essential</u> to the state court's conviction.

Additionally, the degree or severity of the injury caused by the alleged excessive force is a crucial consideration in the qualified immunity analysis, and that issue was expressly disregarded by the criminal trial court as a part of its decision. (*See* GB000537) ("the elements the Court has to look at is it is not just how bad it got, it is just, ultimately, the elements that meet the burden for assault"); (GB000538) ("the harm that the Court has to measure is not how bad the harm was or the gravity to the harm or the length of time that he was harmed"). In fact, testimony during the criminal trial established, and the video shows, that the scrapes McGovern sustained were from the time period in

11

which the several other officers restrained him on the floor—no injuries were evident as resulting from a collar-grab.

At the end of the day, Defendant Hobbs used a de minimis level of force in relation to the hostility and potential risk to the tank—and McGovern himself—in order to effectuate McGovern's removal to an isolation cell. These issues were not determined nor essential to the criminal conviction—just the mere fact there was a physical contact and resulting harm satisfied the elements of the crime in state court. The **only** issues the Court *carefully* and *deliberately* decided was that Defendant Hobbs knowingly made a physical contact with McGovern which resulted in harm. (GB000538). The trial court's decision does not allow this Court to find Hobbs liable under § 1983 without applying a qualified immunity analysis.

      b.      <u>State law claim of battery</u>

Hobbs' entitlement to political subdivision employee immunity also precludes liability based on collateral estoppel with respect to Plaintiff's state law claim of battery.

In Ohio, an employee is entitled to immunity for civil claims for damages for governmental functions. R.C. 2744.03 provides an employee is immune from liability in a civil action against him unless: "(a) The employee's acts or omissions were **manifestly outside the scope of the employee's employment or official responsibilities**; (b) The employee's acts or omissions were with **malicious purpose, in bad faith, or in a wanton or reckless manner**;[10] [or]; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code." R.C. 2744.03(A)(6) (emphasis added); *David v. Matter*, 6th Dist. No. S-17-006, 2017-Ohio-7351, 96 N.E.3d 1012, ¶ 11.[11]

---

[10] Each of these heightened mental states have a particular legal definition—none of which are required to find to find someone guilty of misdemeanor assault under R.C. 2903.13(A). *See Pisoni v. McCord*, 5th Dist. Stark No. 2017CA00111, 2018-Ohio-64, ¶ 32.

[11] Although Plaintiff does not seek summary judgment on his Third Cause of Action regarding negligence, that claim is subject to defeat on immunity grounds. *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶ 10 (2010) ("For these purposes, allegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties.").

If anything, the state court's express determination that Hobbs was acting in the course and scope of his position as a Lucas County Corrections Officer establishes a basis for the <u>applicability</u> of immunity under R.C. 2744.03. (GB000536). Moreover, the trial court expressly declined to hold whether Hobbs acted with malice, and limited its finding to a narrow determination that the physical contact was knowing and purposeful. (GB000537) ("Your act, I did find, was knowingly and purposeful. Whether or not you had the purposeful intent to cause him harm, you had the purposeful intent to cause yourself to have physical contact with him ***."). There can be no collateral estopped on state law battery liability when the underlying record instead supports governmental immunity.

    **C.**    **The Court should exercise its discretion and not apply collateral estoppel**

Alternatively, the Court should decline to apply collateral estoppel entirely. A court can decline to apply collateral estoppel if the circumstances surrounding the litigation warrant ignoring the previous judgment, and to prevent a violation of due process. *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 201, (1983) ("an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action."). "In federal actions, including § 1983 actions, a state-court judgment will not be given collateral estoppel effect, however, where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Haring v. Prosise*, 462 U.S. 306, 313–14 (1983) (internal quotation omitted).

Issues may be relitigated, even if they were raised, argued and decided in a prior proceeding "if there is reason to doubt the quality, extensiveness or fairness of the state proceeding." *United States v. Couch*, 822 F.Supp. 457, 463 (S.D.Ohio 1993) (internal quotations and citations omitted).

13

Given the narrow scope of issues actually relevant to the criminal charge, Defendant Hobbs had limited incentives to develop his governmental immunity defenses to civil claims, as they were outside the scope of the assault charge. For example, the inconsistency between his report and the video was explored in the criminal trial but there was less incentive to litigate that issue thoroughly because it was irrelevant to the determinative issues in the case. In contrast, those inconsistencies are relevant to the immunity considerations. Similarly, his mental state beyond intent to cause contact was irrelevant in the criminal case—yet is determinative of his statutory immunity. And, the severity of McGovern's injury, and when it was caused during the incident, the degree of force used in relation to the circumstances, and McGovern's behavior throughout his stay in booking would be more relevant in this case than the underlying criminal case, leaving little incentive to fully explore and litigate certain facts. Notably, none of these immunity-determinative issues were necessary to Hobbs' conviction. To prevent a violation of Hobbs' due process rights, the Court should decline to apply collateral estoppel to impose liability.

### D. There is no federal claim plead against Hobbs for his conduct in grabbing McGovern.

Finally, the Court should deny summary judgment on the federal "claim" because there is no § 1983 claim pending against Hobbs for his conduct in grabbing McGovern's collar. The only § 1983 claim pled against Hobbs is with respect to his observation of Officer Grant's pushing on McGovern's head, conduct that was not the basis of Hobbs' criminal conviction and thus cannot provide collateral estoppel grounds for summary judgment—and a claim on which Plaintiff does not seek summary judgment.

"The Court is not required to conjure unpleaded facts or construct claims against Defendants on behalf of Plaintiff. *** Rule 10 provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

14

*Natl. Credit Union Administration Bd. v. Zovko*, N.D.Ohio No. 1:13 CV 1430, 2016 WL 9778195, *2 (quoting (Fed. R. Civ. P. 10(b)).

Of Plaintiff's three "Causes of Action," the **only** claim premised on § 1983 relief alleges that Hobbs, and other officers, failed to intervene when Officer Grant pushed Plaintiff's head into the ground. (Doc. 4, ¶ 23, 49). Plaintiff does not articulate a specific Cause of Action against Hobbs for use of excessive force with respect to the collar-grab. There is no direct claim under § 1983 premised on the conduct of Hobbs stemming from his physical contact with McGovern. Without that, there can be no collateral estoppel effect stemming from Hobbs' state court conviction, as it has nothing to do with Hobbs' alleged failure to intervene with later conduct of others. Therefore, the Court should deny the motion for partial summary judgment with respect to the federal "claim" argued in the summary judgment motion.

### III.  CONCLUSION

Plaintiff's bid to preclude Hobbs' immunity defenses fails as a matter of law. Collateral estoppel does not apply to impose liability on Hobbs because the necessary components to a full immunity analysis were not necessary to his conviction. Moreover, there is no pending excessive force claim against Hobbs regarding his contact with Plaintiff. Therefore, this Court should deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

/s/ Kayla L. Henderson
Peter N. Lavalette (0063542)
Kayla L. Henderson (0096072)
Robison, Curphey & O'Connell
Four SeaGate, Ninth Floor
Toledo, OH 43604
(419) 249-7900
(419) 249-7911 – facsimile

Attorneys for Defendant Hobbs

## CERTIFICATE OF COMPLIANCE

This is to certify the above Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment is 15 pages or less, and therefore complies with the page limits set by Local Rule 7.1(f).

/s/ Kayla L. Henderson

## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been filed electronically on this 6th day of March, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the operation of the Court's electronic filing system.

/s/ Kayla L. Henderson