**IN THE U.S. DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Timothy McGovern, | ) | Case No.: 3:18CV2506 |
| | ) | |
| | ) | Judge Jeffrey Helmick |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **INDIVIDUAL DEFENDANTS'** |
| Lucas County, Ohio et al., | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT AND MEMORANDUM** |
| Defendants. | ) | **IN SUPPORT** |
| | ) | |
| | ) | |
| | ) | |

Defendants LaMonte Hobbs, Oliver Watkins, Nate Meyers, Mark Gumpf, and Matthew Grant respectfully move the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56, on the grounds that they are entitled to immunity from suit against Plaintiff's claims. Mr. Hobbs' conviction of criminal assault under Ohio law required only limited proof -- that is, the cause of physical harm to another – without any consideration of reasonableness in context. In stark contrast, claims of excessive force under Section 1983, as well as civil claims of assault, battery and negligence in the context of excessive force by corrections officers in Ohio, necessarily require consideration of reasonableness based on what the actors perceived at the time of the conduct in question. Under this broader analysis of qualified immunity for corrections officers under these circumstances, each of the individual defendants are entitled to summary judgment as a matter of law.

This Court should grant summary judgment for four reasons.

First, the individual Defendants are entitled to qualified immunity under federal law with respect to the individual Defendants' alleged failure to intervene when Officer Grant secured Plaintiff's head on the floor, which is the sole basis of Plaintiff's First Cause of Action. The security footage video recording, as supported by the testimony and evidence in the record of *State of Ohio v. Hobbs*, Lucas County Common Pleas Case No. CR-2017-3023, patently demonstrates the officers acted appropriately at all times. No one violated Plaintiff's constitutional rights, and therefore each is entitled to qualified immunity.

Second, Hobbs, Meyers, Grant, Watkins, and Gumpf are likewise immune under Ohio law for the negligence claim Plaintiff brings against them in his Third Cause of Action. As political subdivision employees, they are immune from claims of negligence with respect to their performance of governmental functions. Moreover, to the extent it is duplicative of the First Cause of Action, it fails for those same reasons argued in relation to that claim.

Third, Plaintiff's Amended Complaint fails to adequately plead any other claims against any of the individual Defendants for a specific use of force—thus, to the extent Plaintiff attempts to argue that there are any pending claims regarding any other use of force outside of the First Cause of Action, the individual Defendants are entitled to summary judgment on this basis. But even if this Court looks past the pleading deficiencies, all Defendants would be entitled to qualified immunity.

Finally, Defendants Hobbs and Grant are entitled to statutory immunity under R.C. 2744.03 with respect to the state law claims of battery that Plaintiff brings against them, as alleged in Plaintiff's Second Cause of Action. The video and the record of *State v. Hobbs* establishes that the officers were justified in exercising their discretion and maintaining control of the tank at the jail. Because their actions were neither malicious nor outside the scope of employment, Plaintiff's claims against Grant and Hobbs are barred by the immunity afforded to political subdivision employees.

As more fully explained in the accompanying Memorandum, this Court should grant summary judgment to the individual Defendants.

Respectfully submitted,


/s/ *Andrew K. Ranazzi*
Andrew K. Ranazzi (00400617)
Maureen O. Atkins (0063379)
Elaine B. Szuch (0080332)
Assistant Prosecuting Attorneys
Lucas County Courthouse, Suite 250
Toledo, Ohio 43604
Telephone: 419.213.2001
Facsimile: 419.213.2011
akranazzi@co.lucas.oh.us
matkins@co.lucas.oh.us
eszuch@co.lucas.oh.us

Counsel for Lucas County Defendants

/s/ *Kayla L. Henderson*
Peter N. Lavalette (0063542)
Kayla L. Henderson (0096072)
Robison, Curphey & O'Connell
Four SeaGate, Ninth Floor
Toledo, OH 43604
(419) 249-7900
(419) 249-7911 – facsimile
plavalette@rcolaw.com
khenderson@rcolaw.com

Counsel for Defendant Hobbs

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................................. ii

STATEMENT OF THE ISSUES ...................................................................................................... iv

SUMMARY OF THE ARGUMENT ................................................................................................ iv

MEMORANDUM IN SUPPORT .................................................................................................... 1

I.      **BACKGROUND** ...................................................................................................... 1

    A.      **Incident at the Lucas County Corrections Center** .............................................. 1

    B.      **Hobbs' Criminal Trial** ............................................................................................ 3

    C.      **Current Civil Rights Suit – Procedural History** .................................................. 4

II.     **LAW AND ANALYSIS** ............................................................................................. 5

    A.      **Standard of Review and Qualified Immunity Framework** ................................. 6

    B.      **Defendants are entitled to summary judgment on Plaintiff's First Cause of Action because Officer Grant did not use excessive force in his attempts to secure Plaintiff, and other officers had no opportunity or reason to believe they needed to intervene** .................................................................................................................. 7

    C.      **Plaintiff's claim for negligence fails because the individual Defendants are entitled to statutory immunity** .................................................................................................. 11

    D.      **Plaintiff does not plead any § 1983 claim against the individual Defendants for direct conduct constituting force against McGovern** .................................................. 12

        1.      *Plaintiff cannot now argue, in summary judgment, new theories of liability for unpled claims* .................................................................................................. 12

        2.      *Even setting aside pleading deficiencies, Hobbs and Grant are entitled to qualified immunity for any potential excessive force claims* .................... 14

            a.      *Hobbs did not use excessive force under the circumstances* ........................... 16

            b.      *Grant did not use excessive force* ................................................................ 17

    E.      **Plaintiff's state law claim of battery fails because Officers Grant and Hobbs are entitled to statutory immunity** ........................................................................... 18

III.    **CONCLUSION** ....................................................................................................... 19

CERTIFICATE OF COMPLIANCE .............................................................................................. 20

CERTIFICATE OF SERVICE ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Federal Cases**

*Aldini v. Johnson*, 609 F.3d 858 (6th Cir.2010) ........................................................... 14
*Alexander v. Carter for Byrd*, 733 Fed.Appx. 256 (6th Cir.2018) ....................................6, 13
*Bass v. Robinson*, 167 F.3d 1041 (6th Cir. 1999) ............................................................ 8
*Bell v. Wolfish*, 441 U.S. 520 (1979) .......................................................................... 15
*Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394 (6th Cir.2007) ............................. 13
*Burgess v. Fischer*, 735 F.3d 462 (6th Cir.2013) ...................................................6, 7, 12, 14
*Degolia v. Kenton Cty.*, 381 F.Supp.3d 740 (E.D.Ky.2019) ........................................8, 15
*Dresher v. Cty.*, N.D.Ohio No. 3:15CV585, 2016 WL 5338042 ...................................... 12
*Eldridge v. City of Warren*, 533 Fed.Appx. 529 (6th Cir. 2013) ...................................... 16
*Fazica v. Jordan*, 926 F.3d 283 (6th Cir.2019) ............................................................... 8
*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir.2006) ............................................. 13
*Guglielmo v. Montgomery Cty., Ohio*, 387 F.Supp.3d 798 (S.D.Ohio 2019) ....................... 15
*Hammock v. Rogers*, N.D.Ohio No. 1:17-CV-1939, 2019 WL 7944420 ......................... 8, 13, 14
*Hanson v. Madison Cty. Detention Ctr.*, 736 Fed.Appx. 521 (6th Cir.2018) ................ 7, 15, 16
*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .................................................................... 6
*Johnson v. Moseley*, 790 F.3d 649 (6th Cir.2015) ......................................................... 13
*Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015) ....................................................... 14, 15
*Lee v. City of Norwalk, Ohio*, 529 Fed.Appx. 778 (6th Cir.2013) ................................... 16
*Lewellen v. Metro. Gov't*, 34 F.3d 345 (6th Cir. 1994) .................................................... 6
*Natl. Credit Union Administration Bd. v. Zovko*, N.D.Ohio No. 1:13 CV 1430, 2016 WL 9778195 ...................... 13
*Ondo v. City of Cleveland*, 795 F.3d 597 (6th Cir. 2015) ............................................... 13
*Ontha v. Rutherford County, Tennessee*, 222 F. App'x 498 (6th Cir. 2007) ............................ 8
*Smith v. City of Troy, Ohio*, 874 F.3d 938 (6th Cir.2017) ................................................. 8
*Smith v. Erie Cty. Sheriff's Dept.*, N.D.Ohio No. 3:12 CV 1853, 2014 WL 320399,
   *aff'd*, 603 Fed.Appx. 414 (6th Cir.2015) ................................................................... 15
*Turner v. Scott*, 119 F.3d 425 (6th Cir.1997) ...........................................................7, 8


**State Cases**

*Anderson v. City of Massillon*, 134 Ohio St.3d 380, 983 N.E.2d 266 (2012) ........................ 12
*David v. Matter*, 6th Dist. No. S-17-006, 2017-Ohio-7351, 96 N.E.3d 1012 ........................ 18
*Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585 (2010) ................ 12


**Federal Statutes**

42 U.S.C. § 1983 ...................................................................................... passim


**State Statutes**

R.C. § 2744.03 ................................................................................................ 12, 18


**Federal Rules**

Fed. R. Civ. P. 10 .............................................................................................. 13
Fed.R.Civ.P. 56 ............................................................................................... 1, 6

## STATEMENT OF THE ISSUES

The issues presented for this Court's consideration are as follows:

(1) Are the individual Defendants Hobbs, Meyers, Watkins, and Gumpf entitled to qualified immunity for a claimed failure to intervene when Defendant Grant allegedly used excessive force in his attempts to secure Plaintiff McGovern, as alleged in Plaintiff's First Cause of Action?

(2) Are the individual Defendants Grant, Hobbs, Meyers, Watkins, and Gumpf entitled to statutory immunity under Ohio law with respect to Plaintiff's Third Cause of Action for negligence?

(3) Did Plaintiff adequately allege any claims for excessive force against the individual Defendants Grant and Hobbs, and if so, are they entitled to qualified immunity?

(4) Are Defendants Hobbs and Grant are entitled to statutory immunity under R.C. 2744.03 with respect to the state law claims of battery that Plaintiff brings against them, as alleged in Plaintiff's Second Cause of Action?

## SUMMARY OF THE ARGUMENT

The individual Defendants are entitled to summary judgment against all claims Plaintiff brings against them.

First, Defendants are entitled to summary judgment on Plaintiff's First Cause of Action because Officer Grant did not use excessive force in his attempts to secure Plaintiff with his knee and his hand, as he perceived an out of control and unsecured inmate in a struggle with fellow officers on the floor. Moreover, the other officers had no opportunity or reason to believe they needed to intervene because the force was not excessive, and the situation was unsecure until they placed handcuffs on the resistant inmate.

Second, Plaintiff's claim for negligence (his Third Cause of Action) fails because the individual Defendants are entitled to statutory immunity. Ohio law precludes claims of against political subdivision employees.

Third, Plaintiff does not plead any § 1983 claim against the individual Defendants for any specific uses of force against McGovern. At the summary judgment phase, Plaintiff cannot argue a new theory of liability against the Defendants for unpled claims. But even setting aside pleading deficiencies, Hobbs and Grant are entitled to qualified immunity for any potential excessive force claims because their conduct did not constitute excessive force. Hobbs exercised de minimis force in grabbing the collar of McGovern in an attempt to avoid tank disruption and remove him to an isolation cell, as was well within his discretion. Moreover, Grant did not use excessive force as he came upon a scene with an unsecured inmate struggling on the floor with fellow officers and used de minimis force until the situation, and the inmate, was secured. Under the circumstances, both officers' conduct was reasonable.

Finally, Plaintiff's state law claim of battery fails (Plaintiff's Second Cause of Action) because Officers Grant and Hobbs are entitled to statutory immunity. For the same reasons this Court cannot find they exercised excessive force, they likewise are not liable for battery because they were not acting with malice nor outside the scope of their employment.

For these reasons, the court should grant summary judgment to the individual Defendants on the basis that they are entitled to federal qualified immunity and Ohio statutory immunity.

<u>**MEMORANDUM IN SUPPORT**</u>

## I.     BACKGROUND

### A.      Incident at the Lucas County Corrections Center

On November 10, 2017, law enforcement officers brought Plaintiff Timothy McGovern to the Lucas County jail following his arrest for drunk driving and menacing police officers.[1] (GB000311). Due to Mr. McGovern's admittedly uncooperative behavior from his arrest through his arrival at booking in the jail, he did not finish the booking process. (GB000312, 326). Skipping the normal phone call and photo for his booking sheet, he was instead placed directly in the West D tank, with other intoxicated inmates, following initial intake and dress out. (GB000312; GB000404).

McGovern, while in the tank, approached Hobbs in the doorway while Hobbs spoke to another detainee being placed in the tank.[2] (GB000329); Ex. 2. McGovern asked Hobbs to use a telephone because he was not able to make his initial call due to his shortened booking process. Hobbs told McGovern to use the phone on the wall of the tank. (GB000329). The two engaged in back-and-forth regarding use of the phone, and McGovern flipped his middle finger to Defendant Hobbs and said, "fuck you." (GB000330). Hobbs also heard McGovern use a racial slur, although this was disputed in the criminal case testimony and their conversation cannot be heard in the recording. (GB000330; GB000433). What is undisputed is the fact that there were several other African-American inmates in the tank with McGovern. (GB000444); (Ex. 2).

McGovern immediately turned around from facing Hobbs in the doorway and began to walk away. (GB000330); (Ex. 2). Because of his disruptive, disrespectful, and uncooperative behavior, and in light of McGovern's similar conduct throughout the night, Hobbs exercised the discretion

---

[1] The trial transcript of *State of Ohio v. Hobbs*, Lucas County Common Pleas Case No. CR-2017-3023, as produced by Plaintiff, is included as Exhibit 1.

[2] The security footage is included on a disk, previously manually filed with the Court as Exhibits A, B, and C to Plaintiff's First Amended Complaint. The disk contains footage from several angles—West Hall, West 6-7, West C-D, and Booking Counter. The "Booking Counter" file contains audio. To avoid duplicity of filing this manual material, Defendants incorporate those exhibits, and referred to collectively as "Exhibit 2," herein.

afforded to him as a correctional officer to maintain safety and order, and made a snap decision to remove McGovern from the tank—which was holding several other African-American inmates—into a single cell across the hall. He did so without seeking prior sergeant approval, to prevent further and immediate disruption in the tank—conduct soundly within Hobbs' discretion when an inmate is uncooperative, disruptive, and disrespectful. (GB000394; GB000412; GB000434). To effectuate the removal, Hobbs grabbed McGovern's shirt collar and pulled McGovern towards him. (GB000434); (Ex. 2). While McGovern characterizes the next step of the incident as a chokehold,[3] the trial court in *State v. Hobbs* expressly noted Hobbs did not choke McGovern upon a careful review of the video, both in normal speed and in frame-by-frame viewing. (GB000538). Rather, the two men lost their footing and fell on the floor in the doorway between the tank and open hallway, with Hobbs' arm around McGovern's upper body. (GB000435, 538); (Ex. 2).

Upon the two men falling to the floor, (Ex. 2, 8:01-8:04), several other correctional officers, including Defendants Gumpf, Meyers, Grant, and Watkins, ran from around the corner to the doorway of the tank upon hearing the commotion.[4] (GB000436); (Ex. 2). Officer Meyers, seeing Hobbs and McGovern struggling on the floor, immediately went into position behind McGovern to assist with placing handcuffs to secure the inmate. (Ex. 2, 8:06). Officer Watkins stepped out of the way while Hobbs and Meyers attempted to gain control of McGovern while monitoring the still-open door to the tank containing other inmates. (Ex. 2, 8:06).

Officer Grant arrived and, seeing the lack of control at this point, (Ex. 2, 8:09), assisted Meyers with his handcuffing by securing McGovern's head. (Ex. 2, 8:13). Officer Grant can be seen using his knee to secure McGovern at one point (Ex. 2, 8:13-8:20). Officer Watkins ultimately closed

---

[3] (*See* Doc. 4, ¶ 21). Notably, however, the prosecution in *State v. Hobbs* did not reference or allege choking as part of Hobbs' criminal assault charge, despite Plaintiff's attempts to paint the interaction as "choking" in the current suit. (GB000524); (Doc. 4, First Am. Compl., ¶ 15-21). The trial court expressly found the conduct did not constitute choking. (GB000538) ("You clearly did not engage with choking him, and that was not something that was put before the Court.").

[4] The prosecution also stated that the conduct occurring once the two men hit the floor was <u>not</u> considered part of Hobbs' criminal assault charges, and the court agreed. (GB000524-25; GB000537).

the tank's door to further secure the situation once Grant and Meyers moved McGovern out of the doorway. (Ex. 2, 8:17-8:21). Once McGovern was shifted out of the doorway, Grant used his hand to keep McGovern under control as he was not yet fully handcuffed, and Grant remained in place securing and/or touching McGovern until he was properly secured and lifted off the ground to be taken to the single cell. (Ex. 2, 8:21-8:37). The officers only gained full control once they were able to place handcuffs on McGovern. (Ex. 2, 8:36); (GB000368).

Thus, while the officers continued their assessment in securing the situation, Officer Grant continued to ensure McGovern was under control. (Ex. 2, 8:21-8:37). Sergeant Gumpf arrived while the officers struggled to gain control of McGovern. (Ex. 2, 8:12). Throughout the encounter, officers yelled at McGovern to stop resisting as they attempted to put his hands behind his back to place handcuffs. (GB000332, 335); (Ex. 2). Officers Meyers and Grant then picked up McGovern and escorted him into the single cell. (GB000368); (Ex. 2, 8:38). Hobbs had moved out of the way of Meyers and Grant so McGovern could be moved out of the doorway after Office Watkins tapped Hobbs' shoulder, and Hobbs then opened the door to the single cell to facilitate the removal. (Ex. 2, 8:18). The entire encounter, from start to finish including the varying levels of interaction, was less than 40 seconds. (Ex. 2, 8:04-8:38).

A nurse at the jail later examined McGovern, who did not need further medical treatment. (GB000402). As a result of the incident, he had a scrape on his forehead and his elbow—like a "strawberry rug burn." (GB000400).

### B.    Hobbs' Criminal Trial

As a result of the encounter with Plaintiff, Hobbs was charged on November 21, 2017 with first-degree misdemeanor assault under R.C. § 2903.13(A) and (C)(1). Following a three-day bench trial, Hobbs was convicted of first-degree misdemeanor assault. *See* Lucas County Common Pleas

Case No. CR-2017-3023.[5] Several witnesses testified at the criminal trial, including McGovern, Hobbs and Gumpf, and Lucas County employees Todd Reed, Dave Carter, and Damon Smith.

In addition to the testimony, the record included State's Exhibits 1-7. Five Exhibits were photographs of Mr. McGovern's alleged injuries. State Exhibit 6 was the Corrections Officer Report authored by Defendant Hobbs. State Exhibit 7 was the video of the incident.

Following a bench trial, the trial court articulated its findings cautiously, limiting them to only the necessary elements for a conviction for the crime charged, and expressly finding Officer Hobbs had acted in the "course of his employment"(GB000536-37). The court concluded that Hobbs' contact with McGovern was not in accordance with proper policies. (GB000537). In interpreting which actions constituted the assault, the court expressly stopped short of any finding that McGovern's head hit the doorjamb immediately after the grab, noting that the video depicted Hobbs and McGovern losing their balance and falling while McGovern was under Hobbs' control. (GB000538). The court expressly stated that Hobbs did not choke McGovern and declined to measure the severity of McGovern's injuries. (GB000538-39).

C.    **Current Civil Rights Suit – Procedural History**

Plaintiff filed a First Amended Complaint on October 30, 2018, asserting claims under 42 U.S.C. § 1983, and state law claims of assault and battery, and negligence. Doc. 4, ¶ 48-53. Plaintiff brings the following claims:

(1) "First Cause of Action – 42 U.S.C. § 1983": Failure to intervene under 42 U.S.C. § 1983 against Hobbs, Meyers, Watkins and Gumpf for Defendant Grant's use of force while McGovern

---

[5] Hobbs appealed his conviction to the Ohio Sixth District Court of Appeals, Case No. CL-2018-1165. The Court of Appeals dismissed the appeal on December 13, 2019 because the issues Hobbs presented were moot based on his completion of his sentence, including required community service. (Certified Copy of Order, attached as Ex. 3). He did not appeal to the Ohio Supreme Court.

was on the floor. (Doc. 4, ¶ 48-49)[6]. Plaintiff also claims Lucas County and Sheriff Tharp are liable for this conduct through its policies and ratification. (Doc. 4, ¶ 50).

(2) "Second Cause of Action – Assault and Battery": Torts of assault and battery against Hobbs and Grant for maliciously causing harmful or offensive contact with Plaintiff, causing harm. (Doc. 4, ¶ 51).

(3) "Third Cause of Action – Negligence/Recklessness": Hobbs, Meyers, Grant, Watkins, and Gumpf breached their duty of using reasonable care toward Plaintiff and did maliciously or in bad faith or wantonly/willingly. (Doc. 4, ¶ 52-53).

Notably, the Complaint does <u>not</u> allege any specific causes of action against Hobbs for his actions in grabbing the collar of McGovern in his attempt to remove him to the single cell, nor against Grant for his placement of his knee or hands while securing McGovern. (*See* Doc. 4).

## II.  LAW AND ANALYSIS

The individual Defendants are entitled to summary judgment. First, none of the officers had any obligation to intervene when Officer Grant had physical contact with McGovern because Grant's exercise of force was not excessive and the others could not have reasonably perceived and acted upon it regardless due to the unsecure situation. Second, the individual officers are entitled to statutory immunity for the negligence claim brought against them. Third, Plaintiff does not allege any excessive force claims, but even if his Complaint is construed as such, Hobbs and Grant are entitled to qualified immunity. Lastly, officers Hobbs and Grant are entitled to statutory immunity for the state law battery claim against them because no evidence supports that they acted outside the scope of employment or with a blameworthy mental state.

---

[6] Paragraph 48 of Plaintiff's First Amended Complaint is a broad-brush statement, immediately preceding the individual claim of failure to intervene: "The Defendants, have, while acting under color of law, deprived Plaintiff of his rights, privileges, and immunities secured to him by the United States Constitution, including the prohibition on excessive force and due process as contained in the Fourth and Fourteenth Amendments." (Doc. 4, ¶ 48). It cannot be fairly said that this paragraph alleges a specific claim against any Defendant.

### A.    Standard of Review and Qualified Immunity Framework

"A moving party is entitled to summary judgment if the pleadings, the discovery and the disclosure materials on file, and any affidavits 'show [ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir.2013) (quoting Fed.R.Civ.P. 56(a)). "There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *** We must ultimately decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. In doing so, the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party." *Id.* (internal citations and quotations omitted).

"Under § 1983, a person 'depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws,' 'under color of any statute, ordinance, regulation, custom, or usage, of any State,' may seek civil redress." *Alexander v. Carter for Byrd*, 733 Fed.Appx. 256, 260 (6th Cir.2018) (quoting 42 U.S.C. § 1983). "A § 1983 claim requires deprivation of a plaintiff's 'federal constitutional or statutory right.'" *Id.* (quoting *Lewellen v. Metro. Gov't*, 34 F.3d 345, 347 (6th Cir. 1994). "Section 1983 confers no substantive rights but rather creates a species of tort liability for the violation of constitutional rights. The threshold inquiry under § 1983, therefore, is to determine the specific constitutional right at issue. The reviewing court must then determine the elements of, and rules associated with, an action seeking damages for [the] violation of that right." *Id.* (internal citations and quotations omitted).

"There is a long-standing principle that government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Burgess*, 735 F.3d at 472 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Once

raised, it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity. To determine whether qualified immunity applies in a given case, we use a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation; and (2) we assess whether the right was clearly established at the time of the incident. *** We can consider these steps in any order." *Id.* (internal citations and quotations omitted).

"[W]here, as here, there is 'a videotape capturing the events in question,' the court must 'view[ ] th[ose] facts in the light depicted by the videotape.'" *Hanson v. Madison Cty. Detention Ctr.*, 736 Fed.Appx. 521, 527 (6th Cir.2018) (citations omitted).

**B.    Defendants are entitled to summary judgment on Plaintiff's First Cause of Action because Officer Grant did not use excessive force in his attempts to secure Plaintiff, and other officers had no opportunity or reason to believe they needed to intervene.**

Plaintiff claims that corrections officers Hobbs, Meyers, Watkins, and Sgt. Gumpf failed to intervene when Officer Grant used allegedly excessive force while he attempted to secure Plaintiff on the ground. (Doc. 4, ¶ 49). This claim fails because Plaintiff has not alleged an excessive force claim against Grant, and Grant did not use excessive force. *Burgess*, 735 F.3d at 475 (affirming on other grounds but stating "the district court found this claim failed because it dismissed the excessive force claim"). Regardless, Grant's conduct did not require intervention because the officers did not owe a duty of protection, nor did Sgt. Gumpf actively encourage Officer Grant. Defendants are entitled to summary judgment on this claim.

Generally, an officer's "mere presence during the altercation, without a showing of some direct responsibility, cannot suffice to subject [him] to liability." *Burgess*, 735 F.3d at 475. If an officer did not participate in the alleged use of excessive force, plaintiff must show that either: (1) the officer supervised the officers who used the excessive force; or (2) the officer owed the plaintiff a duty of protection. *Id.* (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997)). To show that the

officer owed a duty of protection, plaintiff must prove: "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner*, 119 F.3d at 429; *Fazica v. Jordan*, 926 F.3d 283, 289 (6th Cir.2019). Additionally, "[a] supervising officer cannot be held liable merely because he played a passive role, had the right to control subordinate officers, or was simply aware of a subordinate officer's misconduct.*** Instead, supervisory liability attaches only when the officer 'encouraged or condoned the actions' of the subordinate officer." *Hammock v. Rogers*, N.D.Ohio No. 1:17-CV-1939, 2019 WL 7944420, *12 (subsequent history omitted) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

"In the Sixth Circuit, 'courts have been unwilling to impose a duty to intervene where... an entire incident unfolds in a matter of seconds.'" *Dresher v. Cty.*, N.D.Ohio No. 3:15CV585, 2016 WL 5338042, *5 (quoting *Ontha v. Rutherford County, Tennessee*, 222 F. App'x 498, 506 (6th Cir. 2007)). Moreover, each officer must be considered individually with respect to their role in the altercation.

Here, none of the officers could have observed Grant using excessive force, because he did not use excessive force. Moreover, none of the officers had reason to believe excessive force was being used, Sgt. Gumpf did not encourage it, and none of them had the opportunity and means to prevent any force from being used. *See, e.g., Degolia v. Kenton Cty.*, 381 F.Supp.3d 740, 758 (E.D.Ky.2019) ("[Officer's] only *actual* involvement in the events in the booking area was in the scramble to secure [plaintiff]."). Therefore, all officers are entitled to qualified immunity.

First, Officer Grant was fully justified in using limited force to secure McGovern in the course of his assistance to Hobbs, who Grant perceived, upon arrival to the scene, as struggling to gain control of McGovern on the floor following their fall and in light of McGovern's apparent resistance to handcuffs. *See, e.g., Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir.2017) (finding *initial* use of force (taser) justified because officer arrived while the first officer was struggling on the

floor to gain control of pretrial detainee because he "was unaware of what had transpired before his arrival on the scene and because [detainee] appeared to be resisting being handcuffed."). Officer Grant arrived at the scene and saw the unsecured inmate with Hobbs on the floor, having no information as to what instigated the event. (Ex. 2, 8:09). Immediately, to assist with Officer Meyers' attempt to handcuff the inmate—who was apparently resisting such efforts—Grant placed his knee to secure McGovern's head as he writhed on the floor. (Ex. 2, 8:13-8:20). At this point, the tank door was still open, and Grant and Meyers moved McGovern out of the doorway so that Watkins could close it. (Ex. 2, 8:17-8:21). Once McGovern was shifted out of the doorway, Grant then used his hand to keep McGovern under control as he was not yet completely handcuffed and Grant remained securing and/or touching McGovern until he was properly secured and lifted off the ground to be taken to the single cell. (Ex. 2, 8:21-8:37). Under the circumstances, Grant saw an unsecured inmate where several officers had trouble gaining control, and he used limited physical contact to assist with the securing of McGovern. Officer Grant cannot be reasonably said to have been using excessive force.[7] Regardless, none of the other officers were required to intervene.

Former corrections officer Hobbs was involved in the initial altercation with McGovern. Once he and McGovern fell to the floor, Hobbs believed that McGovern was not secured, and he was unable to gain control of McGovern on his own. (GB000436-37). When the other officers arrived, Hobbs stood up and saw his fellow officers also struggle to gain control, as McGovern continued to resist efforts to be handcuffed. (GB000370-71; GB000437). Hobbs would not intervene in what was—and at the time appeared to be—reasonable means employed by Officer Grant in an attempt to secure the situation. At no point was McGovern under control, such that Hobbs would have had reason to believe he needed to stop Grant from what he was doing. A claim

---

[7] Moreover, no excessive force claim against Grant is pending.

against Hobbs for a failure to intervene is therefore illogical, and he is entitled to summary judgment on this claim.

Next, Officer Meyers was likewise not involved in the initial altercation between Hobbs and McGovern. He, and the other officers, were not in the hallway, and ran to the door when they heard the commotion. (Ex. 2, 8:01-8:04). Seeing the incident, he had merely a split second decide what to do. He heard yelling, and saw Hobbs struggling on the floor with McGovern. Thus, he reasonably decided to assist with securing an inmate, coming from inside the detox tank (and admittedly uncooperative during his time in booking) whom he saw on the floor, struggling with a fellow corrections officer, without any further information. Reasonably, he stepped in to assist in gaining and maintaining control by immediately stepping in to secure the uncuffed inmate writhing on the floor, and immediately went into position behind McGovern to assist with placing handcuffs to secure the inmate. (Ex. 2, 8:06). He also recognized that the situation was not secure with the tank door open, and he, along with Grant, shifted McGovern out of the way. (Ex. 2, 8:17-8:21). He reasonably would not have stopped Officer Grant's behavior in controlling McGovern's body, as this was a necessary precaution to allow Meyers to place handcuffs on the resisting inmate, and to gain control of the open detox tank. The officers only gained control once they were able to place handcuffs on McGovern. (Ex. 2, 8:36); (GB000368). At no point would Officer Meyers have perceived any excessive force, nor did he have an opportunity to step in, as he was concerned with the lack of handcuffs on the inmate and was doing his part in attempting to secure the situation. Meyers is entitled to summary judgment.

Similarly, Officer Watkins was not present at the start of the Hobbs/McGovern interaction. (GB000436); (Ex. 2). Once he arrived, Officer Watkins observed Officer Meyers step into the altercation, and Watkins did his part to maintain control by monitoring the tank's open doorway, as there were several inmates in the tank. (Ex. 2, 8:06). At that point, officers Hobbs and Meyers were

attempting to gain control of McGovern and Officer Grant quickly arrived and stepped in as well. Officer Watkins closed the tank's door once Officers Grant and Meyers shifted McGovern's position. (Ex. 2, 8:17-8:21). At no point would Watkins have reasonably perceived that his intervention was necessary, nor did he have the opportunity to abandon what he was doing to keep the situation under control. Watkins is entitled to summary judgment.

Finally, Sgt. Gumpf arrived moments later after the other officers. (Ex. 2, 8:12). Gumpf reasonably perceived that an inmate, coming from the detox tank and who "was a very disruptive and agitated individual" throughout his time in booking (GB000393), was being secured by Meyers and Grant as they attempted to handcuff the inmate (with Hobbs assisting on the side). Throughout the encounter, the officers handling McGovern commanded him to stop resisting. (GB000332, 335); (Ex. 2). Gumpf also perceived McGovern resisting the officer's attempts to handcuff him. (GB000393). At no point would the circumstances have required his intervention, as several officers were working on securing McGovern who was not under control. Moreover, the entire encounter was less than 40 seconds from start to finish. (Ex. 2, 8:04-8:38). At no point would Gumpf have reasonably perceived that he needed to intervene, as the officers were apparently struggling to gain control. As the Sgt. Deputy in booking, Gumpf had supervisory authority over the other officers. (GB000392). There is no evidence that he encouraged or condoned the use of excessive force. Accordingly, Gumpf is entitled to summary judgment.

### C. Plaintiff's claim for negligence fails because the individual Defendants are entitled to statutory immunity.

Third, corrections officers Hobbs, Meyers, Grant, Watkins, and Sgt. Gumpf are likewise immune under Ohio law for the negligence claim Plaintiff brings against them, in his Third (and final) Cause of Action. (Doc. 4, ¶ 52-53). As political subdivision employees, they are immune from claims of negligence with respect to their performance of governmental functions.

Under R.C. 2744.03, the individual Defendant officers are entitled to immunity for Plaintiff's claim of negligence. *Burgess*, 735 F.3d at 479–80 ("we note that employees of an Ohio political subdivision who act within their official duties are statutorily immune from suits in tort based on mere negligence") (citing *Anderson v. City of Massillon,* 134 Ohio St.3d 380, 983 N.E.2d 266, 271–72 (2012)). "The Ohio immunity statute does not exclude negligence from its scope. \*\*\* Even if plaintiff proves defendants were negligent, mere negligence is insufficient to remove the cloak of immunity." *Dresher v. Cty.*, N.D.Ohio No. 3:15CV585, 2016 WL 5338042, \*8–9 (holding "defendants are entitled to immunity from suit with respect to plaintiff's claim that they acted negligently") (internal citations and quotations omitted); *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶ 10 (2010) ("For these purposes, allegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties.").

Here, Plaintiff brings a negligence claim against corrections officers Hobbs, Meyers, Grant, Watkins, and Sgt. Gumpf for their alleged failure to intervene in Officer Grant's conduct in securing McGovern. These officers, however, are entitled to political subdivision immunity under R.C. 2744.03 as they were undisputedly employees of Lucas County at the time of the incident and entitled to immunity under the statute. Moreover, to the extent the negligence claim is duplicative of the First Cause of Action, it fails for those same reasons. Defendants are entitled to summary judgment on Plaintiff's Third Cause of Action.

D. **Plaintiff does not plead any § 1983 claim against the individual Defendants for direct conduct constituting force against McGovern.**

1. *Plaintiff cannot now argue, in summary judgment, new theories of liability for unpled claims.*

Finally, Plaintiff's Amended Complaint fails to adequately plead any other claims against any of the individual Defendants for a specific <u>use</u> of force. Thus, to the extent Plaintiff seeks to recover

under any unpled theories regarding any other use of force outside of the First Cause of Action, the individual Defendants are entitled to summary judgment on this basis. And even if this Court looks past the pleading deficiencies, all Defendants would be entitled to qualified immunity under a theory of excessive force.

"When claiming damages for violations of constitutional rights, Plaintiffs 'must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.' " *Hammock v. Rogers*, N.D.Ohio No. 1:17-CV-1939, 2019 WL 7944420, *9–10 (quoting *Ondo v. City of Cleveland*, 795 F.3d 597, 610 (6th Cir. 2015) (emphasis in original) (subsequent history omitted). A plaintiff cannot expand his theories of liability in summary judgment briefing. *Alexander v. Carter for Byrd*, 733 Fed.Appx. 256, 264–65 (6th Cir.2018); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir.2007) ("To the extent [Plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal."). "A plaintiff must pursue relief under the appropriate constitutional guarantee, and the Court must apply the appropriate legal standard." *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir.2006). "[T]he right said to have been violated must be defined "in light of the specific context of the case, not as a broad general proposition." *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir.2015) (internal citations and quotations omitted).

"The Court is not required to conjure unpleaded facts or construct claims against Defendants on behalf of Plaintiff. *** Rule 10 provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Natl. Credit Union Administration Bd. v. Zovko*, N.D.Ohio No. 1:13 CV 1430, 2016 WL 9778195, *2 (quoting (Fed. R. Civ. P. 10(b)).

Here, Plaintiff does not assert federal claims of excessive force (other than the First Cause of Action) beyond a vague broad-brush allegation against all defendants, generally alleging a violation

of constitutional rights. (Doc. 4, ¶ 48). An allegation of this level of generality is too vague to withstand summary judgment. *See Hammock,* 2019 WL 7944420, *10 ("The Officer defendants are entitled to summary judgment because Hammock's complaint does not specifically allege which officers used excessive force and which officers failed to intervene. The general allegations in Hammock's amended complaint are insufficient to state an excessive-force claim against the defendants, because Hammock's amended complaint does not specifically state which individual officers committed which constitutional violations.").

### 2. *Even setting aside pleading deficiencies, Hobbs and Grant are entitled to qualified immunity for any potential excessive force claims.*

Officers Grant and Hobbs did not use excessive force against McGovern at any point in time. Therefore, to the extent Plaintiff seeks to recover under a theory of liability related to such, those must fail.

Any potential[8] excessive force claims against Hobbs and Grant would be analyzed under the Fourth Amendment's "objective reasonableness" standard, as McGovern was a pretrial detainee at the time of the incident. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015); *Aldini v. Johnson*, 609 F.3d 858, 864-67 (6th Cir.2010); *Burgess*, 735 F.3d at 473.

The Fourth Amendment standard looks at the "reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Burgess*, 735 F.3d at 472. The Supreme Court has laid out non-exclusive objective factors to consider, including:

> the relationship between the need for the use of force and the amount of force used;
> the extent of the plaintiff's injury;
> any effort made by the officer to temper or to limit the amount of force;
> the severity of the security problem at issue;
> the threat reasonably perceived by the officer; and
> whether the plaintiff was actively resisting.

---

[8] Again, while not pled in his Complaint, Plaintiff appears to be seeking recovery on new claims against Hobbs on summary judgment. (Doc. 37, PageID #137); (Doc. 45, PageID #577).

*Kingsley*, 135 S.Ct. at 2473. The standard is not applied "mechanically." *Id.* "It is permissible *** for a juror to consider events leading up to the use of force to the extent that they shed light on what happened in that moment." *Guglielmo v. Montgomery Cty., Ohio*, 387 F.Supp.3d 798, 820 (S.D.Ohio 2019).

In considering the totality of the circumstances, courts recognize "'[r]unning a prison is an inordinately difficult undertaking,' *** and 'safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Kingsley*, 135 S.Ct. at 2474 (internal citations omitted). "The reasonableness of the defendants' actions are assessed from the perspective of a reasonable officer on the scene, rather than with the advantage of 20/20 hindsight." *Smith v. Erie Cty. Sheriff's Dept.*, N.D.Ohio No. 3:12 CV 1853, 2014 WL 320399, *11, *aff'd,* 603 Fed.Appx. 414 (6th Cir.2015).

Not every application of force triggers a constitutional violation, even if it technically constitutes common-law assault. "In the end, the litmus test is whether, on balance, an act of gratuitous violence has been inflicted so as to cross the *constitutional* line that lies beyond common-law assault." *Degolia v. Kenton Cty.*, 381 F.Supp.3d 740, 756–57 (E.D.Ky.2019) (internal citations and quotations omitted) (emphasis in original). "There is, of course, a *de minimis* level of [force] with which the Constitution is not concerned." *Hanson v. Madison Cty. Detention Ctr.*, 736 Fed.Appx. 521, 530 (6th Cir.2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539, n. 21 (1979)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* **"[T]he constitutional floor against excessive force is not consonant with common-law assault. *** That is, even where a suspect does not actively resist, the use of force must cross the *constitutional* line."** *Id.* (emphasis added).

As the Sixth Circuit has recognized, "[a]ctive resistance to an officer's command can legitimize even higher levels of force, such as an officer's use of a Taser. Such resistance can take the

form of 'verbal hostility' *or* 'a deliberate act of defiance." *Hanson*, 736 Fed.Appx. at 531. (emphasis in original) (quoting *Eldridge v. City of Warren*, 533 Fed.Appx. 529, 534–35 (6th Cir. 2013))." "At some point, in response to defiance and belligerence, officers are entitled to preserve internal order and discipline." *Id.* at 531–32 (internal quotation omitted) (holding booking officer was not objectively unreasonable, albeit not demonstrating the most patience or finest of judgment, when he shoved plaintiff against a wall, where plaintiff had been belligerent, profane and uncooperative during booking process and no injury was alleged to result from the initial shove). *See also Lee v. City of Norwalk, Ohio*, 529 Fed.Appx. 778, 783 (6th Cir.2013) (officer did not use excessive force where plaintiff was belligerent and confrontational throughout her time in booking when force was a mild shove and grabbing shirt sleeves to put plaintiff in her chair, along with pressure on her neck to prevent swinging). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Hanson*, 736 Fed.Appx. at 530.

a. *Hobbs did not use excessive force under the circumstances.*

Applying the flexible *Kingsley* factors, Hobbs did not cross a constitutional line. First, Plaintiff's verbal hostility and disrespectful gesture presented a threat to the tank's stability, which contained several other inmates. Hobbs heard McGovern—who is Caucasian—use a racial slur (GB000330). Hobbs, recognizing the disruptive effect that could have had on the tank, let alone McGovern's own safety, in light of the African-American inmate population, reasonably made a split-second decision to remove McGovern. To do so, he used *de minimis* force to remove him by grabbing his collar.

Plaintiff's conduct leading up to the altercation also shows that Hobbs had to make this split-second decision. McGovern's admittedly uncooperative behavior during his stay in booking

and the charges on which he was brought in on (which included menacing police officers) are considerations for this Court, even though they were not <u>essential</u> to the state court's conviction. Moreover, Sgt. Gumpf recalled that McGovern was "a very aggressive inmate" exhibiting combative and disruptive behavior during his stay at the jail. (GB000403). When he arrived at the jail and was at the booking counter, he was aggressive and brought in for charges that included menacing police officers. Moreover, McGovern was ordered to stop resisting <u>during</u> the incident, further indication of his uncooperative behavior. (GB000332, 335).

The minor nature of alleged injury suffered by McGovern in the brief altercation further refutes any claim of excessive force used. As described in the testimony of *State v. Hobbs*, and the video shows, the scrapes McGovern sustained on his forehead and elbow were from the time period in which the several other officers had to struggle with McGovern to gain control of him after McGovern was on the floor, and not while he was in contact with Hobbs. A nurse at the jail later examined McGovern, and he did not need further medical treatment. (GB000402).

At the end of the day, Defendant Hobbs used a *de minimis* level of force in relation to the hostility and potential risk to others in the tank—and McGovern himself—in order to effectuate McGovern's removal to an isolation cell. Considering the totality of the circumstances, Hobbs' conduct cannot be said to have been objectively unreasonable. Thus, to the extent this Court construes Plaintiff's Amended Complaint as bringing a claim for excessive force against Hobbs, he is entitled to qualified immunity.

> b. *Grant did not use excessive force.*

As discussed, Grant arrived at the scene after Hobbs and McGovern had fallen to the floor. He reasonably perceived that Hobbs and Meyers were struggling to gain control of McGovern, so he assisted with those efforts. His *de minimis* force in securing McGovern initially, then following the shift out of the doorway, cannot be said to have been objectively unreasonable. During his points of

contact with McGovern, the situation was unsecure as McGovern was not handcuffed, and continued to writhe around on the floor, actively resisting handcuffs.

Thus, to the extent this Court construes Plaintiff's Amended Complaint as bringing a claim for excessive force against Grant, he is entitled to qualified immunity.

> **E.** **Plaintiff's state law claim of battery fails because Officers Grant and Hobbs are entitled to statutory immunity.**

Both Hobbs and Grant are entitled to immunity for Plaintiff's battery claim because the video and record of *State v. Hobbs* demonstrate they were acting reasonably under the circumstances.

In Ohio, an employee is entitled to immunity for civil claims for damages for governmental functions. R.C. 2744.03 provides an employee is immune from liability in a civil action against him unless: "(a) The employee's acts or omissions were **manifestly outside the scope of the employee's employment or official responsibilities**; (b) The employee's acts or omissions were with **malicious purpose, in bad faith, or in a wanton or reckless manner**; [or]; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code." R.C. 2744.03(A)(6) (emphasis added); *David v. Matter*, 6th Dist. No. S-17-006, 2017-Ohio-7351, 96 N.E.3d 1012, ¶ 11.

This court can review the video footage and the record of *State v. Hobbs* and conclude that both Hobbs and Grant were acting within their scope of employment and without any heightened mental state. In fact, the state court expressly determined that Hobbs was acting in the course and scope of his position as a Lucas County Corrections Officer, establishing a basis for the applicability of immunity under R.C. 2744.03. (GB000536). The record does not support any finding of malice, bad faith or any other blameworthy mental state on behalf of either Hobbs or Grant. Moreover, as discussed throughout this memorandum, Officer Grant acted appropriately in his used of limited force and physical contact to secure McGovern during the incident. Immunity protects both Hobbs and Grant, and therefore, they are entitled to summary judgment on Plaintiff's battery claim.

## III.  CONCLUSION

Plaintiff brings limited claims in his complaint, all of which are barred by immunity. The individual Defendants are entitled to qualified immunity regarding their alleged failure to intervene when Officer Grant secured Plaintiff's head on the floor—the sole basis of Plaintiff's First Cause of Action. None of the officers perceived a need to intervene, as the situation they encountered was not secure. Additionally, state law immunity bars the claims for negligence and battery. Finally, no claims for excessive force are actually asserted, but even if the court considers the merits of such potential claims, Grant and Hobbs are entitled to qualified immunity. For these reasons, the individual Defendants are entitled to summary judgment.

Respectfully submitted,

/s/ *Andrew K. Ranazzi*
Andrew K. Ranazzi (00400617)
Maureen O. Atkins (0063379)
Elaine B. Szuch (0080332)
Assistant Prosecuting Attorneys
Lucas County Courthouse, Suite 250
Toledo, Ohio 43604
Telephone: 419.213.2001
Facsimile: 419.213.2011
akranazzi@co.lucas.oh.us
matkins@co.lucas.oh.us
eszuch@co.lucas.oh.us
Counsel for Lucas County Defendants

/s/ *Kayla L. Henderson*
Peter N. Lavalette (0063542)
Kayla L. Henderson (0096072)
Robison, Curphey & O'Connell
Four SeaGate, Ninth Floor
Toledo, OH 43604
(419) 249-7900
(419) 249-7911 – facsimile
plavalette@rcolaw.com
khenderson@rcolaw.com
Counsel for Defendant Hobbs

## CERTIFICATE OF COMPLIANCE

This is to certify the above Memorandum in Support of Individual Defendants' Motion for Summary Judgment is 20 pages or less, and therefore complies with the page limits set by Local Rule 7.1(f) for dispositive motions on a standard track.

*/s/ Kayla L. Henderson*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing has been filed electronically on this 26th day of March, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the operation of the Court's electronic filing system.

*/s/ Kayla L. Henderson*