UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| Timothy McGovern, | : | Case No. 3:18-cv-2506 |
| --- | --- | --- |
| Plaintiff, | : | Judge: Jeffery J. Helmick |
| v. | : | |
| | : | **PLAINTIFF'S INITIAL RESPONSE** |
| Lucas County, Ohio et al., | : | **TO INDIVIDUAL DEFENDANTS'** |
| | : | **MOTION FOR SUMMARY** |
| Defendants. | : | **JUDGMENT** |
| | : | |

This memorandum represents a partial response to the Motion for Summary Judgment filed by LaMonte Hobbs, Oliver Watkins, Nate Meyers, Mark Gumpf, and Matthew Grant (Individual Defendants). (Doc. 46). Plaintiff has requested a status conference, (Doc. 48), and filed a motion pursuant to Fed.R.Civ.P. 56(d) to seek additional discovery and time to supplement his response in light of that discovery, (Doc. 47). Based on this partial response, the Court should deny the motion for summary judgment. In the alternative, Plaintiff respectfully requests an opportunity to supplement this response after any additional discovery ordered by this Court.

**MEMORANDUM**

I.  **INTRODUCTION**

On November 10, 2017, Defendant LaMonte Hobbs used force against Plaintiff Timothy McGovern after Mr. McGovern raised his middle finger at Defendant Hobbs. Hobbs grabbed the Plaintiff as he walked away and took him violently to the floor. Plaintiff suffered the violation of his person, the pain of the assault, and physical injuries as a result of the use of force. Following the violent altercation, Defendant Hobbs was investigated, tried and criminally convicted of assault under O.R.C. § 2901.13(A) and (C)(1). On October 30, 2018, Plaintiff McGovern filed a

civil suit for claims against Individual Defendants LaMonte Hobbs, Oliver Watkins, Nate Meyers, Mark Gumpf, and Matthew Grant, alleging violations of his right to be free from excessive force under the Fourth and Fourteenth Amendments of the United States Constitution, assault and battery, and breach of the duty of reasonable care. (Doc. 1; Doc. 4). These individual Defendants have now filed a motion for summary judgment based on qualified immunity for the federal claim and state law immunity for the state law claims. This motion should be denied.

## II. FACTS

Defendant Hobbs was tried and convicted of assault for the very use of force that is the basis for this lawsuit. (Doc. 46-3). On November 10, 2017 Mr. McGovern was an inmate at the Lucas County Correctional Center. (Doc. 46-1, GB285). He asked for a phone call and Defendant correctional officer Hobbs declined to let him use the phone in booking. (Doc. 46-1, GB313-314; Doc. 1-2, GB249 at 7:25-8:00). Frustrated, McGovern then stated "fuck you" and displayed his middle finger as he walked away from the cell door and into the cell. *Id*. While his gesture was rude, it was also dismissive, effectively concluding their interaction. Mr. McGovern said it as he walked away, clearly conveying to any reasonable person that he accepted that he would not receive a phone call at that time and that the interaction was over. *Id*. Defendant Hobbs then choose to enter the cell, taking multiple steps to catch up with Mr. McGovern and grabbing him by the collar, jerking him violently out of the cell and on to the ground with no justification. *Id*.

Hobbs was not properly exercising his discretion to use force on Mr. McGovern in order to maintain order in the cell that housed Mr. McGovern and several other inmates. The criminal trial judge held:

> 13 I do, however, have an inmate that is clearly walking away
> 14 in the pod, is clearly not meeting any of the standards that
> 15 were presented to the Court in which an officer was allowed to
> 16 act on making contact with an inmate…
> 20 but you quickly reacted and yanked him back by the
> 21 collar, yanking him through the door. Your act, I did find, was
> 22 knowingly and purposeful

(Doc. 46-1, GB537).

> 8 the Court finds that that meets the
> 9 standard that you did knowingly cause or attempt to cause
> 10 physical harm in that there was no defense to that motion. It
> 11 wasn't in self-defense of yourself. It wasn't in defense of
> 12 others. It wasn't stopping him at any point of destroying
> 13 property or creating other than a disruptive moment of being
> 14 disrespectful, which, unfortunately, and I don't -- I don't say
> 15 this on the pretense that I think that any officer deserves to
> 16 be talked to disrespectfully. This meets the standard of an
> 17 assault without having any of the protections that are normally
> 18 given to a corrections officer in the areas of which he's
> 19 allowed to normally have contact with inmates.

*Id*. at GB538.

The criminal court finding is consistent with the criminal trial testimony of Defendant Sgt. Gumpf, who when asked by the court about the encounter stated that Defendant Hobbs did not properly exercise his discretion.

> 6 THE COURT: -- to the room. Is there any
> 7 activity by Mr. McGovern, verbal or anything witnessed on the
> 8 screen, that allows an officer to make physical contact in that
> 9 moment?
> 10
> 11
> THE WITNESS: There is not.
> THE COURT: So policy doesn't allow for it on the
> 12 verbal? Is there an egregiousness as to what level of verbal
> 13 egregiousness an inmate can say to an officer that allows the
> 14 next contact?
> 15 THE WITNESS: You got to have thick skin. If
> 16 someone is calling, saying stuff to you or flipping you off,
> 17 it's not enough to snatch him up, so.

*Id*. at GB372.

Defendant Gumpf further stated that barring an emergency, any decision to move an inmate should start with a verbal command. *Id*. at GB377. Hobbs gave no verbal command to McGovern. In fact, Gumpf testified that there was no need at all to remove McGovern from the cell. Sgt. Gumpf stated that Hobbs "could have just shut the door." *Id*. at GB409.

      Defendant Hobbs is Black. Plaintiff McGovern is white. Hobbs claims that McGovern used a racial slur. *Id*. at GB433. McGovern denies that claim. *Id*. at GB330. There is no evidence other than the report of Defendant Hobbs that Mr. McGovern use a racial slur and it is not heard on the video. In fact, the first time Hobbs relayed the facts of the event he did not mention any slur. (Doc. 1-2, GB248). He only added that claim later, when he drafted his report. Attachment A, Hobbs Report. In addition, the video does not support an inference that a slur was used or that there was any threat to the stability of the cell, since none of the inmates in the cell react to any statements made by McGovern. (Doc. 1-2, GB249 at 7:55-8:00). They only react after Defendant Hobbs grabs Mr. McGovern, heads suddenly raising in unison for the first time as they look up to see what is happening. *Id*. at 8:00-8:05. After the door to the cell is shut, one inmate quietly watches the assault through the window. (Doc. 1-2, GB249 at 8:20-8:30). That inmate has provided a declaration stating that he saw and heard what happened where he says that the Plaintiff did not use a racial slur. Attachment B, Declaration of Corey Marshall. The video also clearly shows Defendant Grant kneeling on McGovern's head and then using his hands to hold and slam his head into the concrete floor over an extended period. (Doc. 1-2, GB251 at 8:10-8:39). None of the other Defendants stop this unnecessary use of force.

      The only depositions taken so far are Defendants Watkins and Gumpf. No deposition has yet been taken of Defendants Hobbs, Meyers, or Grant. All three of those defendants are listed on the

Defendants' 26(a) disclosure as witnesses on whom they will rely for testimony at trial. Nor has the jail been inspected by Plaintiff's counsel.

## III. ARGUMENT

### A. Standard for Determining Summary Judgment

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence presented is construed in the light most favorable to the non-moving party, which is given the benefit of all favorable inferences that can be drawn from them. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Courts are "free to trust their eyes when a videotape unequivocally shows what happened during an encounter… and unequivocally contradicts [one party's] version of events." *Oliver v. Greene*, 613 F.App'x. 455, 457 (6th Cir. 2015), citing *Carter v. City of Wyoming*, 294 Fed.Appx. 990, 992 (6th Cir. 2008). However, where there is no "blatant contradiction" between the plaintiff's version of the facts and the video, the "[i]nferences supported by… the video, remain drawn in favor of the non-moving party." *Id.*, citing *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007). Here, Plaintiff's version of the facts is supported by and consistent with the video. Defendants have not produced any other evidence in discovery that challenges or disputes that version of the facts, much less that establishes that there is no factual dispute. In fact, Defendants have filed and cited to no deposition testimony, affidavits, or other evidence, primarily because none exists, as discovery is still ongoing and many depositions have not been completed, including depositions of many of the named Defendants.

Their motion for summary judgment is based entirely on the video and the criminal trial transcript of Defendant Hobbs. Defendants argue that the Court should make certain inferences based on the video. Plaintiff makes other inferences. For the purpose of this motion, the Court

must make all reasonable inferences in Plaintiff's favor. For that reason, summary judgment is inappropriate at this time.

### B. Standard for Determining Liability for Excessive Force and Failure to Protect in Jail Setting Under Fourteenth Amendment

In order to state an actionable claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right established by the Constitution or a federal law; and 2) the defendants, acting under color of law, caused the deprivation. See *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). Plaintiffs raises two constitutional violations. First, that Defendants Hobbs and Grant used excessive force against Mr. McGovern. Second, that Defendants Hobbs, Meyers, Watkins, and Gumpf failed to intervene in the excessive force of Defendant Grant. The Individual Defendants clearly acted under color of law when they interacted with Plaintiff while serving as corrections officers. A "public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins,* 487 U.S. 42, 50 (1988), citing See, e.g., *Parratt v. Taylor*, 451 U.S. 527, 535–536 (1981); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157, n. 5 (1978).

For purposes of the excessive force claim against Defendants Hobbs and Grant, a defendant violates the Fourth and Fourteenth Amendments when he purposely or knowingly uses force that is objectively unreasonable against a pretrial detainee. *Kingsley v. Henderson*, 135 S.Ct. 2466, 2473 (2015). This is an objective standard, based on "the perspective of a reasonable officer on the scene." *Id*. The Sixth Circuit has stated that the inquiry is "highly fact-dependent." *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 538 (6th Cir. 2015). In *Guglielmo v. Montgomery Cty., Ohio*, 387 F. Supp. 3d 798, 817 (S.D. Ohio 2019), the Court denied summary judgment to individual correction officers who used force on an inmate in a jail holding cell and

others who failed to intervene.  In that case the court noted, "[t]he following considerations are relevant to assessing whether a use of force is reasonable or unreasonable: 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*, citing *Kingsley*, 135 S.Ct. at 2473.  This list is not exclusive.  *Id.*, citing *Coley*, 799 F.3d at 538.

Defendants Hobbs, Meyers, Watkins and Gumpf are also sued for failing to stop the excessive force of Grant, who was kneeling on and slamming the head of Mr. McGovern into the floor.  "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  Thus, the facts regarding exactly what Defendants Hobbs, Meyers, Watkins, and Gumpf individually perceived is very important.

The Defendants all seek summary judgment based on qualified immunity.  Corrections officers are not entitled to qualified immunity when precedent governs the specific facts at issue and has clearly established that the facts create a deprivation of a Fourteenth Amendment right. *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018).  Whether a right is clearly established must be determined against the backdrop of law in place at the time of the conduct.  *Id*.  The existing precedent must give sufficient guidance to "squarely govern" the facts at issue.  *Id*. at 1153.  That precedent can be established by the Supreme Court, the Sixth Circuit, and other circuits.  *Cahoo v. SAS Analytics Inc*, 912 F.3d 887, 898 (6th Cir. 2019).  A number of decisions in the Sixth

Circuit involving use of force on inmates clearly established by November 10, 2017 that a correction officer violates the Fourteenth Amendment by unnecessarily using force on an inmate. Established precedent also established that corrections officers who fail to protect inmates also violate the Fourteenth Amendment. Thus, the success of Defendants' motion depends on establishing that there is no dispute that Defendants Hobbs and Grant acted reasonably and no dispute that Defendants Hobbs, Meyers, Watkins, and Gumpf did not observe excessive force from Defendant Grant.

### C. Contested Facts Preclude Summary Judgment for LaMonte Hobbs and Matthew Grant on Civil Rights Claims

In *Kingsley*, the Supreme Court applied the following factors to assess use of force claims in a corrections environment:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

135 S. Ct. at 2473.

As set out in Plaintiff's partial motion for summary judgment, this Court should grant summary judgment as to liability against Defendant Hobbs based on issue preclusion. (Doc. 37). A corrections officer convicted of assault for use of force on the job clearly has engaged in unreasonable force, unjustified by any alleged security, especially in light of the fact that Mr. McGovern was walking back to his bedroll and posed no danger to anyone. A court has already found that Defendant Hobbs assaulted Mr. McGovern, and specifically that he had no penological justification for doing so. (Doc. 46-1, GB537). To say otherwise now would directly conflict with the finding of the criminal court.

However, at best, if this Court were to find that collateral estoppel does not bar litigation of this issue, whether Defendant Hobbs used excessive force is in dispute.[1] The *Kingsley* "objective reasonableness" test "turns on the 'facts and circumstances of each particular case'." *Kingsley*, 135 S.Ct. at 2473 (*quoting Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, Defendants assert that the "Plaintiff's verbal hostility and disrespectful gesture presented a threat to the tank's stability," and that Defendant Hobbs "recogniz[ed] the disruptive effect" he would have. (Doc. 46, p. 16). Defendants cite to no evidence in support of these assertions, possibly because no deposition has been conducted of Defendant Hobbs. *Id*. At most, these are inferences based on the video, which Defendants do cite to repeatedly. However, the video shows clearly that Mr. McGovern was walking away from Defendant Hobbs when Hobbs followed him into the cell, grabbed him by the collar, and yanked him violently to the ground. (Doc. 1-2, GB249 at 7:59-8:05). No racial slurs can be heard on the video and no inmates show any response to the exchange, supporting the inference in Plaintiff's favor that no slur was uttered, and disputing Defendants' inference that there was a "threat to the tank's stability." (Doc. 1-2, GB248 at 7:55-8:00). For purposes of summary judgment, those inferences must be taken in Plaintiff's favor as the non-moving party. This does not support summary judgment in Defendant Hobbs' favor on the excessive force claim.

This case is similar to *Morabito v. Holmes*, 628 F. App'x 353 (6th Cir. 2015), involving a 2011 use of force. In that case, defendants were denied summary judgment for using force after they "entered [the plaintiff's] cell without a legitimate purpose – they simply were frustrated

---

[1] Defendants claim Plaintiff failed to plead a use of force claim against Hobbs and Grant. Plaintiff's complaint directly alleges that Defendants Hobbs and Grant "deprived Plaintiff of his rights, privileges, and immunities secured to him by the United States Constitution, including the prohibition on excessive force and due process as contained in the Fourth and Fourteenth Amendments." (Doc. 4, ¶ 48). Paragraphs 15-21 clearly describe the facts of Defendant Hobbs' use of excessive force. Paragraphs 22-23 clearly describe the facts of Defendant Grant's use of excessive force.

with [the plaintiff's] outbursts and demands for medical treatment." *Id*. at 354. The video shows no legitimate purpose to Defendant Hobbs' actions. The Plaintiff was never violent or threatening and there was no threat to the security of the cell. (Doc. 1-2, GB249 at 7:00-8:45). The Plaintiff said "fuck you" and Defendant Hobbs acted out in frustration. *Id*. This is supported by Defendant Hobbs' own recitation of the incident, as seen on the video after the assault, where he explains to the other officers that the Plaintiff was "mad at me because he didn't get a phone call" and that he responded "you're not going to get a phone call right now." (Doc. 1-2, GB248 at 9:30-9:48). Later, he describes it again, saying the plaintiff "put his finger up, fuck me, in my face." *Id*. at 10:44-10:51). He demonstrates the motion multiple times, throwing up his finger and putting his finger up in the face of another officer. *Id*. at 9:34-9:50. Defendant Hobbs, however, never states that Mr. McGovern used a racial slur.

Moreover, Hobbs was summarily punishing McGovern for what he claims were disrespectful statements. "*Kingsley* also reaffirms that pretrial detainees cannot be subjected to the use of excessive force that amounts to punishment, precisely because they cannot be punished at all." *Coley*, 799 F.3d at 538 (internal quotations omitted). In *Coley*, the Sergeant choked an inmate after "having had time to consider his options while escorting Benton to the medical cells, and while attempting to remove Benton's multiple restraints." The sergeant "chose to act in a manner that Plaintiffs plausibly allege was the product of frustration and anger, designed to punish and cause harm rather than a good faith effort to maintain discipline." *Id*. at 540–41. A jury could easily watch the video of Defendant Hobbs following Mr. McGovern into the cell and pulling him out by force to yank him to the ground and find that it was made to punish Mr. McGovern and not an effort to maintain discipline. Indeed, if Hobbs truly believed the security in the cell was at risk due to McGovern's speech, he should have given a verbal

command for McGovern to cuff up and then moved him without using force unless necessary. (Doc. 46-1, GB377). That did not happen. Defendant Hobbs has not met his burden to show that there is no dispute that his acts were reasonable. Summary judgment should be denied.

Contested acts also preclude summary judgment for Defendant Grant. Defendants assert that Defendant Grant "reasonably perceived that Hobbs and Meyers were struggling to gain control of McGovern, so he assisted with those efforts." (Doc. 46, p. 17). This assertion cites to no facts in support of it. *Id*. Additionally, the Defendant assert that "the situation was unsecure as McGovern was not handcuffed, and continued to writhe around on the floor, actively resisting handcuffs." *Id*. at 17-18. Defendants likewise provide no factual support for this assertion. *Id*. This is at best an inference based on their interpretation of the video. They cite to no deposition testimony of Defendant Grant, because a deposition has not yet been conducted. While Defendants interpretation of the video is that Mr. McGovern was "actively resisting handcuffs," he is never seen on camera resisting. He lays on the ground with his hands under him or to his sides and yells "I'm not resisting" repeatedly. (Doc. 1-2, GB251 at 8:05-8:40, GB248 at 8:10-8:15). His legs never move. *Id*. A jury could easily find that Defendant Grant was not acting reasonably when he put his knee on top of Mr. McGovern's head or when he violently shoved his head into the floor while Mr. McGovern was not resisting. Mr. McGovern has a right to "be free from physical force when not resisting." *Crawford v. Geiger*, 656 Fed.App'x. 190, 204 (6th Cir. 2016), citing *Wysong v. City of Heath*, 260 F.Appx. 848, 856 (2008) (citing *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006); *Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 902 (6th Cir. 2004)); see also *Griffith v. Coburn*, 473 F.3d 650, 659–60 (6th Cir. 2007) (noting that it was clearly established that officers may not use gratuitous violence against an individual who

"pose[s] no threat to the officers or anyone else"). There is no evidence that the force used by Defendant Grant was necessary because Mr. McGovern was not resisting.

Defendant Grant has not met his burden to show that there is no dispute that his acts were reasonable. Summary judgment should be denied.

### D. Contested Facts Preclude Summary Judgement for Defendants LaMonte Hobbs, Nate Meyers, Oliver Watkins, and Sgt. Mark Gumpf on Civil Rights Claims Based on Failure to Protect

Defendant Grant knelt on and pressed McGovern's head into the concrete floor over a period of 27 seconds. (Doc. 1-2, GB251 at 8:12-8:39). The other individual defendants all had the opportunity and capacity to prevent him from continuing to use this level of force on the Plaintiff but did not act. The Sixth Circuit has explained that "a correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). Generally, an officer will be found liable for failure to protect prisoners in the face of excessive force when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Cole v. City of Dearborn*, 448 F. App'x 571, 577 (6th Cir.2011) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997)). There is no question that Defendants Hobbs, Watkins, and Meyers were present and observing Defendant Grant's actions. Thus, for the same reasons that summary judgment should be denied on the excessive force claim against Defendant Grant, the other officers, who are all clearly visible standing over Mr. McGovern and Defendant Grant during his use of force, under Plaintiff's version of facts, all observed the excessive force.

The second question is whether they had the opportunity and means to prevent the excessive force. When an incident unfolds too quickly for officers to have the opportunity to

intervene, they will not be held liable. *Ontha v. Rutherford Cnty., Tenn.*, 222 F. App'x 498, 506 (6th Cir.2007) (six or seven seconds was insufficient amount of time to intervene to prevent vehicle from striking plaintiff). However, a duty to protect has been recognized where the "underlying episode of excessive force has spanned a *sufficient period of time* for a nearby defendant to both perceive what was happening and intercede to stop it." *Ontha*, 222 F. App'x at 506. (emphasis added). In *Goodwin v. City of Painesville*, 781 F.3d 314, 328-329 (6th Cir. 2015), officers who were present for a 26 second tasing were able to observe the excessive use of force and had sufficient opportunity and means to intervene, even an officer who entered apartment sometime after tasing began.

For the same reasons, the defendants in this case had sufficient opportunity to intervene. Defendant Grant applied pressure to Mr. McGovern's head for approximately 27 seconds, first kneeling on his head, then shoving his head into the floor with his hands, then holding him into the floor with his hands. (Doc. 1-2, GB251 at 8:12-8:39). Defendants Hobbs, Meyers, Watkins, and Gumpf, like the officers in *Goodwin*, who participated in the handcuffing of the tased plaintiff, were involved in the use of force in various ways, but importantly, were all close enough to be able to intervene. Defendant Watkins, for example, can be seen directing the others to pull Mr. McGovern though the doorway. (Doc. 1-2, GB249 at 8:10-8:22). He had the time to observe what was happening, decide on a response, and to act based on that decision. He could have used the same time to conclude the use of force was unreasonable and to tell Defendant Grant to stop, or to pull him off of Mr. McGovern's head, but he did not. The use of force then continued. Defendant Meyers participated in the handcuffing, and thus had the same ability as the officers in *Goodwin* to intervene. (Doc. 1-2, GB249 at 8:05-8:38). Defendant Gumpf stood slightly further away than the others as he watched the use of force continue, but he likewise had

the time to intervene if he had chosen to. (Doc. 1-2, GB249 at 8:10-8:40). He chose not to. Defendants attempt to offer facts as to what each Defendant saw and knew and the basis for their actions. However, Defendants do not cite to any deposition testimony from any of these Defendants or any other factual basis, but rather rely on their interpretation of the video. (Doc. 46, p. 8-11). Because this is again a question of whose inferences to draw from the video, those inferences must be taken in Plaintiff's favor.

Because the parties dispute how to interpret the video, including regarding whether Mr. McGovern was resisting, whether Defendant Grant's use of force was reasonable, and whether the Defendants had sufficient opportunity to intervene, and the video is not inconsistent with Plaintiff's version, this Court must accept Plaintiff's version for purposes of this motion. Summary judgment in favor of the Defendants is inappropriate at this time.

### E. Contested Facts Preclude Summary Judgment for Defendants on State law Claims

Ohio law does not immunize "acts or omissions [done] with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. § 2744.03(A)(6)(b). Given that material facts are in dispute on the Section 1983 claims and that those same facts would establish recklessness and defeat immunity under R.C. § 2744.03(A)(6)(b),[2] summary judgment should be denied to the Defendant officers on this claim as well. *See Hopper,* 887 F.3d at 759-760 (summary judgment on state law wrongful death claim denied when genuine issues of material fact were present on excessive force claim).

---

[2] R.C. § 2744.03(A)(6)(b) provides immunity to an employee of a political subdivision for any act or omission in connection with a governmental or proprietary function unless such acts or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner." Under Ohio law, "wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result," while "reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon,* 983 N.E. 2d 266, 273-74 (Ohio 2012). The issue of recklessness is normally a question of fact to be determined by the jury. *Chesher v. Neyer,* 477 F.3d 784, 800 (6th Cir. 2007).

## IV. CONCLUSION

Defendants Hobbs, Grant, Meyers, Watkins, and Gumpf have not met their burden to show that there is no genuine dispute of material fact. This Court must take all reasonable inferences based on the video in Plaintiff's favor. Because there are genuine disputes of material fact regarding all of the claims, Summary Judgment should be denied in its entirety.

Respectfully submitted,

/s/Alphonse A. Gerhardstein
Alphonse A. Gerhardstein (0032053)
Attorney for Plaintiff
Jennifer L. Branch (0038893)
Trial Attorney for Plaintiff
M. Caroline Hyatt (0093323)
Attorney for Plaintiff
Gerhardstein & Branch Co. LPA
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
Tel (513) 621-9100
Fax (513) 345-5543
agerhardstein@gbfirm.com
jbranch@gbfirm.com
chyatt@gbfirm.com

Robert W. Bohmer (0063419)
RUPP, WESCHE, HAGANS, BOHMER, NEWTON & HARMON, LLP
302 N. Defiance Street
P.O. Box 178
Archbold, Ohio 43502
Phone: 419.445-8815
Fax: 419.445-1080
robert@northwestohiolaw.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing memorandum in opposition to summary judgment does not exceed twenty (20) pages in length and is within the limitations of a standard track matter.

s/ Alphonse A. Gerhardstein
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2020, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

s/ Alphonse A. Gerhardstein  
Attorney for Plaintiff