# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Timothy McGovern,                   :    Case No.  3:18-cv-2506
                                    :
            Plaintiff,              :    Judge: Jeffery J. Helmick
      v.                            :
                                    :
Lucas County, Ohio et al.,          :
                                    :
            Defendants.             :
                                    :


## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS ............................................................................................................... 2

III.  ARGUMENT ..................................................................................................... 6

A.    Standard for Determining Summary Judgment ............................................ 6

B.    Standard for Determining Liability for Excessive Force and Failure to Protect in Jail Setting Under Fourteenth Amendment .................................................. 7

C.    Contested Facts Preclude Summary Judgment for LaMonte Hobbs and Matthew Grant on Civil Rights Claims ........................................................................ 9

D.    Contested Facts Preclude Summary Judgment for Defendants LaMonte Hobbs, Nate Meyers, Oliver Watkins, and Sgt. Mark Gumpf on Civil Rights Claims Based on Failure to Protect ................................................................. 14

E.    Contested Facts Preclude Summary Judgment for Defendants on State law Claims 18

IV.   CONCLUSION ................................................................................................ 18

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F) .................................... 19

CERTIFICATE OF SERVICE ............................................................................... 19

# TABLE OF AUTHORTIES

Cases

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970) .......................................................................................... 7

*Anderson v. Massillon*,
   134 Ohio St. 3d , 983 N.E. 2d 266 (2012) ......................................................... 18

*Cahoo v. SAS Analytics Inc*,
   912 F.3d 887 (6th Cir. 2019) .............................................................................. 9

*Champion v. Outlook Nashville, Inc.*,
   380 F.3d 893 (6th Cir. 2004) ............................................................................ 13

*Chesher v. Neyer*,
   477 F.3d 784 (6th Cir. 2007) ............................................................................ 18

*Cole v. City of Dearborn*,
   448 F.App'x 571 (6th Cir. 2011) ....................................................................... 14

*Coley v. Lucas Cnty., Ohio*,
   799 F.3d 530 (6th Cir. 2015) ..................................................................... passim

*Cox v. Kentucky Dept. of Transp.*,
   53 F.3d 146 (6th Cir. 1995) ................................................................................ 6

*Crawford v. Geiger*,
   656 F.App'x. 190 (6th Cir. 2016) ...................................................................... 13

*Flagg Bros. v. Brooks*,
   436 U.S. 149 (1978) .......................................................................................... 7

*Goodwin v. City of Painesville*,
   781 F.3d 314 (6th Cir. 2015) ................................................................. 15, 16, 17

*Graham v. Connor*,
   490 U.S. 386 (1989) ........................................................................................ 10

*Griffith v. Coburn*,
   473 F.3d 650 (6th Cir. 2007) ............................................................................ 13

*Guglielmo v. Montgomery Cty., Ohio*,
   387 F. Supp. 3d 798 (S.D. Ohio 2019) ..................................................... 7, 8, 17

*Hopper v. Plummer,*
  887 F.3d 744, 759-760 (6th Cir. 2018) ................................................................. 18

*Kingsley v. Henderson,*
  135 S.Ct. 2466 (2015) ................................................................. 7, 8, 9, 10, 11

*Kisela v. Hughes,*
  138 S.Ct. 1148 (2018) ................................................................. 8

*McHenry v. Chadwick,*
  896 F.2d 184 (6th Cir. 1990) ................................................................. 14

*Oliver v. Greene,*
  613 F.App'x. 455 (6th Cir. 2015) ................................................................. 6, 15

*Ontha v. Rutherford Cnty., Tenn.,*
  222 F.App'x 498 (6th Cir.2007) ................................................................. 15, 17

*Parratt v. Taylor,*
  451 U.S. 527 (1981) ................................................................. 7

*Scott v. Harris,*
  550 U.S. 372 (2007) ................................................................. 6

*Smoak v. Hall,*
  460 F.3d 768 (6th Cir. 2006) ................................................................. 13

*Turner v. Scott,*
  119 F.3d 425 (6th Cir. 1997) ................................................................. 8, 14

*U.S. v. Diebold, Inc.,*
  369 U.S. 654 (1962) ................................................................. 6

*West v. Atkins,*
  487 U.S. 42 (1988) ................................................................. 7

*Wysong v. City of Heath,*
  260 F.App'x. 848 (2008) ................................................................. 13

Statutes

42 U.S.C. § 1983 ................................................................. 7,14,18

O.R.C. § 2901.13(A) and (C)(1) ................................................................. 1

R.C. § 2744.03(A)(6)(b) ................................................................. 18

Individual Defendants LaMonte Hobbs, Matthew Grant, Nate Meyers, Oliver Watkins, and Mark Gumpf filed a motion for summary judgment on March 26, 2020, prior to the conclusion of discovery. (Doc. 46). Plaintiff moved for additional discovery pursuant to Fed.R.Civ.P. 56(d). (Doc. 47). The Court granted Plaintiff's motion and set the deadline to respond to the Defendants' motion for summary judgment for September 18, 2020. (Doc. 54). Pursuant to that Order, the Parties completed the requested discovery and Plaintiff now files this memorandum in opposition to Defendants' motion for summary judgment, respectfully requesting that the Court deny Defendants' motion in its entirety.

## MEMORANDUM

### I. INTRODUCTION

On November 10, 2017, Defendant LaMonte Hobbs used force against Plaintiff Timothy McGovern after Mr. McGovern raised his middle finger at Defendant Hobbs. Hobbs grabbed the Plaintiff as he walked away and took him violently to the floor. After he was on the ground, Defendant Grant joined in, kneeling on his head and neck and slamming his head into the concrete floor. Defendants Hobbs, Meyers, Watkins, and Gumpf observed Grant's actions and chose not to intervene in his excessive use of force, despite having the opportunity to do so. Plaintiff suffered the violation of his person, the pain of the assault, and physical injuries as a result of the use of force. Following the violent altercation, Defendant Hobbs was investigated, tried and criminally convicted of assault under O.R.C. § 2901.13(A) and (C)(1). Grant failed to file a report and his use of force was never investigated.

On October 30, 2018, Plaintiff McGovern filed a civil suit for claims against Individual Defendants LaMonte Hobbs, Matthew Grant, Nate Meyers, Oliver Watkins, and Mark Gumpf, alleging violations of his right to be free from excessive force under the Fourth and Fourteenth

Amendments of the United States Constitution, assault and battery, and breach of the duty of reasonable care. (Doc. 1; Doc. 4). These individual Defendants have now filed a motion for summary judgment based on qualified immunity for the federal claim and state law immunity for the state law claims. This motion should be denied.

## II.    FACTS

On November 10, 2017 Mr. Timothy McGovern was an inmate at the Lucas County Correctional Center. (Doc. 46-1, PageID# 623). He asked for a phone call and Defendant correctional officer Hobbs declined to let him use the phone in booking. (Doc. 46-1, PageID# 651-52; Doc. 1-2, West C-D Cells Video, GB249 at 7:25-8:00). Frustrated, McGovern told Hobbs "fuck you" and displayed his middle finger as he walked away from the cell door and into the cell. (Doc. 1-2, West C-D Cells Video, GB249 at 7:55-8:05). Defendant Hobbs then choose to enter the cell after him, taking multiple steps to catch up with Mr. McGovern, and grabbed him by the collar from behind, jerking him violently out of the cell and wrapping his arm around Mr. McGovern's neck as he took him to the ground. *Id.*

The other individual Defendants heard the commotion and ran in. Defendants Meyers and Grant immediately joined in on the use of force, Meyers moving in first, then Grant climbing on top of Mr. McGovern's head as Defendant Hobbs stood up and backed away. (Doc. 1-2, West Hall Video, GB251 at 8:00-8:22). Mr. McGovern was not resisting while on the floor. (Attachment A, Sheriff Tharp Depo., p. 32-33). He repeatedly yelled "I'm not resisting" and had his arms out to the side. (Doc. 1-2, West Hall Video, GB251 at 8:10-8:40, Booking Counter Video, GB248 at 8:10-8:30). When Defendant Hobbs is heard yelling "put your hands behind your back," Mr. McGovern yells "I'm trying." (Doc. 1-2, Booking Counter Video, GB248 at 8:26-8:29). Despite the fact that he was not resisting, Defendants Meyers and Grant continued to

use force on Mr. McGovern, including when Defendant Grant knelt on Mr. McGovern's head and neck and slammed his head into the concrete floor with his hands. (Doc. 1-2, West Hall Video, GB251 at 8:10-8:40). Mr. McGovern was then handcuffed and led to another cell. (*Id.*, at 8:30-8:45). He received first aid for abrasions on his head. (Attachment I, Depo. Ex., Medical Screening Form, p. 149). After leaving the jail, he experienced recurring headaches and eventually went to the hospital, where he was diagnosed with post-concussion syndrome. (Attachment B, McGovern Depo., p. 46-47; Attachment I, Depo. Ex., Promedica Records, p. 158).

There was no justification for Defendant Hobbs' use of force. Mr. McGovern was not assaultive, so Defendant Hobbs' actions were not self-defense. (Attachment A, Sheriff Tharp Depo., p. 33). In fact, McGovern was walking away from Defendant Hobbs when Defendant Hobbs grabbed him. Additionally, the use of force was not necessary to effectuate the transfer of Mr. McGovern to another cell. An officer can remove and separate an inmate to prevent a violent or dangerous situation, but can only do so without sergeant approval when prompt action is necessary. (*Id.*, p. 21). There is no indication that such prompt action was necessary here. While Defendant Hobbs alleges that Mr. McGovern called him a "nigger," this cannot be heard on the video and none of the other inmates responded in any way that would suggest they had heard such a vile slur. (Doc. 1-2, Booking Counter Video, GB248; Attachment C. Hobbs Depo., p. 44, agreeing slur cannot be heard on video). Corey Marshall, an African-American inmate, was nearby and did not hear Mr. McGovern use a racial slur. (Doc. 49-2, Corey Marshall Declaration). In fact, the first time Hobbs relayed the facts of the event he did not mention any slur either. (Doc. 1-2, Booking Counter Video, GB248). He only added that claim later, when he drafted his report. (Doc. 49-1, Hobbs Report, PageID# 919). However, even if it were

assumed that Mr. McGovern did use a slur, and that there appeared to be a risk of violence erupting in response to his use of the slur (of which there is no evidence, as none of the other inmates responded in any way to anything Mr. McGovern said), and that it was so urgent that prompt action was necessary to remove Mr. McGovern that Defendant Hobbs had to remove him immediately without securing the approval of a sergeant first, the first step in moving an inmate is to make a verbal request.  (Attachment A, Sheriff Tharp Depo., p. 23).  However, Defendant Hobbs never made a verbal request to Mr. McGovern to exit the cell, or any other request. (Attachment C, Hobbs Depo., p. 38).  The only remaining explanation for the use of force is that Defendant Hobbs used force against Mr. McGovern because he was rude, flipping him off and saying "fuck you," or alternatively, according to Defendant Hobbs, using a racial slur.  However, this is no justification for the use of force, because being rude is not an acceptable basis for a use of force.  (Attachment A, Sheriff Tharp Depo., p. 19, 37-38; Attachment D, Reed Depo., p. 14). This includes when an inmate says "fuck you" or even when they use a racial slur.  Attachment (A, Sheriff Tharp Depo., p. 19; Attachment D, Reed Depo., p. 15).  There was thus no basis for using force on Mr. McGovern.

According to Plaintiff's expert, Defendant Hobbs' actions were unreasonable and unnecessary and violated contemporary correctional practice, Ohio jail standards, and LCSO policy.  (Attachment J, Raney Report, p. 19).  Plaintiff's expert also reviewed the specific manner in which Defendant Hobbs took Mr. McGovern to the ground, concluding that the neck restraint was not inadvertent but an intentional neck restraint and takedown.  (*Id*., p. 20).  Mr. Raney explained that if Defendant Hobbs had lost his balance and been falling, the momentum would have pushed his elbow and forearm to the floor.  (*Id*.).  "Instead, he was able to maintain control as he wrapped [his arm] around McGovern's neck."  (*Id*.).  This was consistent with an

intentional neck restraint and takedown. (*Id.*). Even if McGovern had refused Defendant Hobbs' verbal request, a neck restraint is not allowed unless the resisting inmate is assaultive. (Attachment A, Sheriff Tharp Depo, p. 25). The use of such a restraint violated contemporary correctional practices, Ohio jail standards and LCSO policy. (Attachment J, Raney Report, p. 20).

When Defendant Sheriff Tharp reviewed the use of force, he agreed that Defendant Hobbs' use of force was excessive. (Attachment A, Sheriff Tharp Depo., p. 28). He felt it was "an assault." (*Id.*). The incident was forwarded to the prosecutor, and at trial, the trial judge also agreed that there was no justification to Defendant Hobbs' use of force. (*Id.*, p. 28; Doc. 37-1, Hobbs Criminal Trial Transcript, PageID# 417-18). Defendant Hobbs was convicted of assault on July 3, 2018 for the very use of force that is the basis for this lawsuit. (Doc. 46-3, PageID# 885).

Defendant Grant's use of force, kneeling on Mr. McGovern's head and neck, holding his head down, and slamming it into the concrete floor, is similarly unjustified. If an inmate is not being assaultive, a neck restraint is not allowed. (Attachment A, Sheriff Tharp Depo., p. 25). This includes any use of pressure to the head or neck. (*Id.* at 25-26). Mr. McGovern was not resisting, and was not assaultive to any of the officers. (*Id.*, at 32-33). Thus, there was no justification for the use of force. However, Defendant Grant is clearly applying pressure to Mr. McGovern's head and neck. (Doc. 1-2, West Hall Video, GB251 at 8:10-8:40). Defendant Sheriff Tharp agreed that he appears to put his knee on Mr. McGovern's head and that he held McGovern's head down with his hands. (Attachment A, Sheriff Tharp Depo., p. 45, 50, 53). The Sheriff testified that these actions were not consistent with Lucas County training or policy and that they should have been investigated. (*Id.*, p. 45-46, 50, 53; Attachment D, Reed Depo.,

p. 37). Defendant Grant's use of force was excessive and unjustified. Plaintiff's expert opined that Defendant Grant's use of force violated contemporary correctional practices, Ohio jail standards and LCSO policy. (Attachment D, Reed Depo., p. 20).

Corrections officers also have an obligation to intervene when they witness excessive force. (Attachment A, Sheriff Tharp Depo., p. 54-55; Attachment D, Reed Depo., p. 39). Defendant Sheriff Tharp agreed that Defendants Gumpf, Meyers, Watkins, and Hobbs should have intervened if they saw Grant put pressure on Mr. McGovern's head. (Attachment A, Sheriff Tharp Depo., p. 54-55). Defendant Grant admits he put pressure on and held down Mr. McGovern's head. (Attachment E, Grant Depo., p. 54). Defendants Gumpf, Meyers, Watkins, and Hobbs were all watching from mere feet away. (Attachment G, Gumpf Depo., p. 12; Attachment H, Watkins Depo., p. 12). Despite this, none of the Defendants intervened to stop the excessive use of force by Defendant Grant. Plaintiff's expert opined that the failure to intervene in this unreasonable and unnecessary force violated LCSO policy, Ohio jail standards and contemporary correctional practices. (Attachment J, Raney Report, p. 21).

## III. ARGUMENT

### A. Standard for Determining Summary Judgment

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence presented is construed in the light most favorable to the non-moving party, which is given the benefit of all favorable inferences that can be drawn from them. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). This includes "[i]nferences supported by… video." *Oliver v. Greene*, 613 F.App'x. 455, 457 (6th Cir. 2015), citing *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007).

Defendants have not established that there are not material facts in dispute. Their motion for summary judgment is based on the video and the criminal trial transcript of Defendant Hobbs. Defendants argue that the Court should make certain inferences based on the video, but the video and criminal trial actually support that there are material facts in dispute precluding summary judgment. In addition, now that discovery is complete, it is even more clear that there are material facts in dispute. For these reasons, summary judgment should be denied.

**B. Standard for Determining Liability for Excessive Force and Failure to Protect in Jail Setting Under Fourteenth Amendment**

In order to state an actionable claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right established by the Constitution or a federal law; and 2) the defendants, acting under color of law, caused the deprivation. See *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). Plaintiff raises two constitutional violations. First, that Defendants Hobbs and Grant used excessive force against Mr. McGovern. Second, that Defendants Hobbs, Meyers, Watkins, and Gumpf failed to intervene in the excessive force of Defendant Grant. The Individual Defendants clearly acted under color of law when they interacted with Plaintiff while serving as corrections officers. A "public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins,* 487 U.S. 42, 50 (1988), citing See, e.g., *Parratt v. Taylor*, 451 U.S. 527, 535–536 (1981); *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 152 (1970); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157, n. 5 (1978).

For purposes of the excessive force claim against Defendants Hobbs and Grant, a defendant violates the Fourth and Fourteenth Amendments when he purposely or knowingly uses force that is objectively unreasonable against a pretrial detainee. *Kingsley v. Henderson*, 135 S.Ct. 2466, 2473 (2015). This is an objective standard, based on "the perspective of a reasonable

officer on the scene." *Id*. The Sixth Circuit has stated that the inquiry is "highly fact-dependent." *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 538 (6th Cir. 2015). In *Guglielmo v. Montgomery Cty., Ohio*, 387 F. Supp. 3d 798, 817 (S.D. Ohio 2019), the Court denied summary judgment to individual correction officers who used force on an inmate in a jail holding cell. In that case the court noted, "[t]he following considerations are relevant to assessing whether a use of force is reasonable or unreasonable: 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*., citing *Kingsley*, 135 S.Ct. at 2473. This list is not exclusive. *Id*., citing *Coley*, 799 F.3d at 538.

Defendants Hobbs, Meyers, Watkins and Gumpf are also sued for failing to stop the excessive force of Grant, who was kneeling on and slamming the head of Mr. McGovern into the floor. "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Thus, the facts regarding exactly what Defendants Hobbs, Meyers, Watkins, and Gumpf individually perceived is very important.

The Defendants all seek summary judgment based on qualified immunity. Corrections officers are not entitled to qualified immunity when precedent governs the specific facts at issue and has clearly established that the facts create a deprivation of a Fourteenth Amendment right. *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018). Whether a right is clearly established must be determined against the backdrop of law in place at the time of the conduct. *Id*. The existing

precedent must give sufficient guidance to "squarely govern" the facts at issue. *Id.* at 1153. That precedent can be established by the Supreme Court, the Sixth Circuit, and other circuits. *Cahoo v. SAS Analytics Inc*, 912 F.3d 887, 898 (6th Cir. 2019). A number of decisions in the Sixth Circuit involving use of force on inmates clearly established by November 10, 2017 that a correction officer violates the Fourteenth Amendment by unnecessarily using force on an inmate. Established precedent also established that corrections officers who fail to protect inmates also violate the Fourteenth Amendment. Thus, the success of Defendants' motion depends on establishing that there is no dispute that Defendants Hobbs and Grant acted reasonably and no dispute that Defendants Hobbs, Meyers, Watkins, and Gumpf did not observe excessive force from Defendant Grant or did not have the opportunity to intervene.

### C. Contested Facts Preclude Summary Judgment for LaMonte Hobbs and Matthew Grant on Civil Rights Claims

In *Kingsley*, the Supreme Court applied the following factors to assess use of force claims in a corrections environment:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

135 S. Ct. at 2473.

As set out in Plaintiff's partial motion for summary judgment, this Court should grant summary judgment as to liability against Defendant Hobbs based on issue preclusion. (Doc. 37). A corrections officer convicted of assault for use of force on the job clearly has engaged in unreasonable force, unjustified by any alleged security, especially in light of the fact that Mr. McGovern was walking back to his bedroll and posed no danger to anyone. A court has already

found that Defendant Hobbs assaulted Mr. McGovern, and specifically that he had no

penological justification for doing so. (Doc. 46-1, PageID# 875). To say otherwise now would

directly conflict with the finding of the criminal court, the exact situation that issue preclusion is

designed to prevent.

However, at best, if this Court were to find that collateral estoppel does not bar litigation

of this issue, whether Defendant Hobbs used excessive force is clearly in dispute.[1] The *Kingsley*

"objective reasonableness" test "turns on the 'facts and circumstances of each particular case'."

*Kingsley*, 135 S.Ct. at 2473 (*quoting Graham v. Connor*, 490 U.S. 386, 396 (1989). Here,

Defendants assert that the "Plaintiff's verbal hostility and disrespectful gesture presented a threat

to the tank's stability," and that Defendant Hobbs "recogniz[ed] the disruptive effect" he would

have. (Doc. 46, PageID# 605). Defendants cite to no evidence in support of these assertions. In

fact, the Sheriff himself disagrees. He testified that there was no basis for Defendant Hobbs'

assault of Mr. McGovern. (Attachment A, Sheriff Tharp Depo., p. 28). It is disputed whether

Mr. McGovern used a racial slur during his interaction with Defendant Hobbs, but any asserted

"disruptive effect" is an unreasonable conclusion that a reasonable corrections officer would not

make given the facts. The video shows no evidence of any response to Mr. McGovern's acts,

much less a disruptive one. (Doc. 1-2, West C-D Cells Video, GB249 at 7:40-8:00). Defendant

Hobbs cannot use force against an inmate just because he was rude. (Attachment A, Sheriff

Tharp Depo., p. 19; Attachment D, Reed Depo., p. 14). And even if there was a "threat to the

---

[1] Defendants claim Plaintiff failed to plead a use of force claim against Hobbs and Grant. Plaintiff's complaint
directly alleges that Defendants Hobbs and Grant "deprived Plaintiff of his rights, privileges, and immunities
secured to him by the United States Constitution, including the prohibition on excessive force and due process as
contained in the Fourth and Fourteenth Amendments." (Doc. 4, ¶ 48). Paragraphs 15-21 clearly describe the facts
of Defendant Hobbs' use of excessive force. Paragraphs 22-23 clearly describe the facts of Defendant Grant's use
of excessive force.

tank's stability," Defendant Hobbs would still not be justified in using force unless Mr. McGovern was assaultive.  (Attachment A, Sheriff Tharp Depo., 25).

Defendant Hobbs was summarily punishing McGovern for what he claims were disrespectful statements.  *"Kingsley* also reaffirms that pretrial detainees cannot be subjected to the use of excessive force that amounts to punishment, precisely because they cannot be punished at all."  *Coley*, 799 F.3d at 538 (internal quotations omitted).  In *Coley*, the Sergeant choked an inmate after "having had time to consider his options while escorting [the plaintiff] to the medical cells, and while attempting to remove [his] multiple restraints."  The sergeant "chose to act in a manner that Plaintiffs plausibly allege was the product of frustration and anger, designed to punish and cause harm rather than a good faith effort to maintain discipline."  *Id*. at 540–41.  The real reason behind Defendant Hobbs' actions is plainly evident from the video.  Any jury would watch the video of Defendant Hobbs following Mr. McGovern into the cell and pulling him out by force to yank him to the ground and find that it was made in anger because Mr. McGovern was rude.  This basis, however, is patently unreasonable.  It is, however, actually supported by Defendant Hobbs' own recitation of the incident, as seen on the video after the assault, where he explains to the other officers that the Plaintiff was "mad at me because he didn't get a phone call" and that he responded "you're not going to get a phone call right now."  (Doc. 1-2, Booking Counter Video, GB248 at 9:30-9:48).  He continues, saying the plaintiff "put his finger up, fuck me, in my face."  (*Id*. at 10:44-10:51).  He demonstrates the motion multiple times, throwing up his finger and putting his finger up in the face of another officer.  (*Id*. at 9:34-9:50).  Defendant Hobbs, however, never stated that Mr. McGovern used a racial slur, nor did he state that Mr. McGovern was assaultive or threatening, or that he had refused to comply with any verbal request.

There was no legitimate purpose to Defendant Hobbs' actions. The Plaintiff was never violent or threatening and there was no threat to the security of the cell. (Doc. 1-2, West C-D Cells Video, GB249 at 7:00-8:45). The overwhelming evidence supports that Defendant Hobbs used excessive force without justification. (Attachment A, Sheriff Tharp Depo., p. 19, 28, 33, 37-38; Attachment D, Reed Depo., p. 32; Attachment J, Raney Report, p. 19-20). Defendant Hobbs has not met his burden to show that there is no dispute that his acts were reasonable. Plaintiff has presented more than sufficient evidence to show that material issues of fact in this case are genuinely contested. For these reasons, summary judgment must be denied.

Contested acts also preclude summary judgment for Defendant Grant. Grant is seen in the video, kneeling on Mr. McGovern's head and neck, holding his head down, and slamming his head into the concrete floor. (Doc. 1-2, West Hall Video, GB251 at 8:10-8:40). Many witnesses agree at least in part with Plaintiff's interpretation of the video. Defendant Grant testified that he put pressure on Mr. McGovern's head. (Attachment E, Grant Depo., p. 64; Attachment F, Meyers Depo., p. 42 (Grant "had his hand on his head")). Sheriff Tharp agrees that at one point Defendant Grant's knee does appear to be on Mr. McGovern's head, as does Defendant Hobbs. (Attachment A, Sheriff Tharp Depo., p. 45; Attachment C, Hobbs Depo., p. 54-55). In fact, Defendant Grant admits that he used his knee to secure Mr. McGovern's head in Defendants' motion, explaining that he "placed his knee to secure McGovern's head." (Doc. 46, PageID# 598). Defendants do not argue that it did not happen, only that it was reasonably justified.

Defendants assert that Defendant Grant "reasonably perceived that Hobbs and Meyers were struggling to gain control of McGovern, so he assisted with those efforts." (Doc. 46, PageID# 606). This assertion cites to no facts in support of it. (*Id*.). Additionally, the

12

Defendants assert that "the situation was unsecure as McGovern was not handcuffed, and continued to writhe around on the floor, actively resisting handcuffs." (*Id*. at 17-18). Defendants likewise provide no factual support for this assertion. (*Id*.). Indeed, the facts support the opposite. While Defendants' interpretation of the video is that Mr. McGovern was "actively resisting handcuffs," Sheriff Tharp disagrees. He testified that Mr. McGovern did not appear to be resisting. (Attachment A, Sheriff Tharp Depo., 32-33). McGovern is never seen on camera resisting. He lays on the ground with his hands under him or to his sides and yells "I'm not resisting" repeatedly. (Doc. 1-2, West Hall Video, GB251 at 8:05-8:40, Booking Counter Video, GB248 at 8:10-8:15). His legs never move. (*Id*.).

Mr. McGovern has a right to "be free from physical force when not resisting." *Crawford v. Geiger*, 656 F.App'x. 190, 204 (6th Cir. 2016), citing *Wysong v. City of Heath*, 260 F.App'x. 848, 856 (2008) (citing *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006); *Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 902 (6th Cir. 2004)); see also *Griffith v. Coburn*, 473 F.3d 650, 659–60 (6th Cir. 2007) (noting that it was clearly established that officers may not use gratuitous violence against an individual who "pose[s] no threat to the officers or anyone else"). Because Mr. McGovern was not resisting and not assaultive, this use of force was unauthorized and dangerous. (Attachment J, Raney Report, p. 20). Indeed, Sheriff Tharp agrees with Plaintiff's expert. When he watched the video of the incident, he agreed that Defendant Grant's knee appeared to be on McGovern's head at times and that he was using his hands to hold down McGovern's head. (Attachment A, Sheriff Tharp Depo., p. 45, 50). He agreed with Plaintiff's expert that these techniques were not consistent with Lucas County training or policy. (*Id*., p. 45-46, 50, 53). According to Sheriff Tharp, Defendant Grant's use of force should have been investigated, and the reason Grant was not disciplined for this violations was because he had not

13

"viewed [the video] this closely before" because it "wasn't... brought to [his] attention." (*Id*., p. 46-47).

Defendant Grant has not met his burden to show that there is no dispute that his acts were reasonable. Plaintiff has presented more than sufficient evidence to show that material issues of fact in this case are genuinely contested. Summary judgment should be denied.

### D. Contested Facts Preclude Summary Judgment for Defendants LaMonte Hobbs, Nate Meyers, Oliver Watkins, and Sgt. Mark Gumpf on Civil Rights Claims Based on Failure to Protect

Defendant Grant knelt on and pressed McGovern's head and neck into the concrete floor over a period of 27 seconds. (Doc. 1-2, West Hall Video, GB251 at 8:12-8:39; Attachment E, Grant Depo., p. 64; Attachment A, Sheriff Tharp Depo., p. 45, 50, 53; Attachment C, Hobbs Depo., p. 55; Attachment D, Reed Depo., 37, 52). The other individual Defendants, Hobbs, Meyers, Watkins, and Gumpf, all had the opportunity and capacity to prevent him from continuing to use this level of force on the Plaintiff but did not act. The Sixth Circuit has explained that "a correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). Generally, an officer will be found liable for the failure to protect inmates in the face of excessive force when "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Cole v. City of Dearborn*, 448 F.App'x 571, 577 (6th Cir. 2011) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997)).

If the other Defendants saw this excessive, dangerous, and unjustified use of force, they had an obligation to intervene. (Attachment A, Sheriff Tharp Depo., p. 55; Attachment D, Reed Depo., p. 39). There is no question that Defendants Hobbs, Watkins, and Meyers were present

and observing Defendant Grant's actions.  (Doc. 1-2, West Hall Video, GB251 at 8:000-8:40).

As they were all present in the immediate vicinity, the inference must be taken that they did

perceive the use of force.  *Oliver*, 613 F.App'x. at 457-459 (unless video "unequivocally

contradict[s plaintiff's] version of events" the court must draw inferences supported by the video

in favor of plaintiff).  Thus, because there is a genuine dispute of material fact regarding

Defendant Grant's excessive use of force, there is a genuine dispute over whether the other

individual Defendants perceived that excessive use of force.

The second question is whether they had the opportunity and means to prevent the

excessive force.  When an incident unfolds too quickly for officers to have the opportunity to

intervene, they will not be held liable.  *Ontha v. Rutherford Cnty., Tenn*., 222 F.App'x 498, 506

(6th Cir.2007) (six or seven seconds was insufficient amount of time to intervene to prevent

vehicle from striking plaintiff).  However, a duty to protect has been recognized where the

"underlying episode of excessive force has spanned a *sufficient period of time* for a nearby

defendant to both perceive what was happening and intercede to stop it."  *Ontha*, 222 F.App'x at

506.  (emphasis added).  In *Goodwin v. City of Painesville*, 781 F.3d 314, 328-329 (6th Cir.

2015), officers who were present for a 26 second tasing were able to observe the excessive use of

force and had sufficient opportunity and means to intervene, even an officer who entered the

apartment sometime after tasing began.

For the same reasons, the defendants in this case had sufficient opportunity to intervene.

Defendant Grant applied pressure to Mr. McGovern's head and neck for approximately 27

seconds, first kneeling on his head, then shoving his head into the floor with his hands, then

holding him into the floor with his hands.  (Doc. 1-2, West Hall Video, GB251 at 8:12-8:39).

Defendants Hobbs, Meyers, Watkins, and Gumpf, like the officers in *Goodwin*, who participated

in the handcuffing of the tased plaintiff, were involved in the use of force in various ways, but importantly, were all close enough to be able to intervene. Defendant Watkins, for example, can be seen directing the others to pull Mr. McGovern though the doorway. (Doc. 1-2, West C-D Cells Video, GB249 at 8:10-8:22). He had the time to observe what was happening, decide on a response, and to act based on that decision. He could have used the same time to conclude the use of force was unreasonable and to tell Defendant Grant to stop, or to pull him off of Mr. McGovern's head, but he did not. The use of force then continued. Defendant Hobbs had the same opportunity to act but did not. He is close enough to touch Defendant Grant for approximately the first 10 seconds of Defendant Grant's use of force, and then stands over him for the remainder. (Doc. 1-2, West Hall Video, GB251 at 8:10-8:40). Indeed, as the one person who knew the most of the incident, he knew immediately without having to arrive and make an assessment of the scene that Mr. McGovern was not resisting and not assaultive and should have communicated that to his fellow officers. Defendant Meyers participated in the handcuffing, and thus had the same ability as the officers in *Goodwin* to intervene. (Doc. 1-2, West C-D Cells Video, GB249 at 8:05-8:38). He was the closest to Grant and could have easily acted. He is within arm's reach of Grant the entire time. (Doc. 1-2, West Hall Video, GB251 at 8:10-8:40). Finally, "[n]o one was in a better position to see what was happening… than Gumpf" who "watch[ded] everything that was happening.' (Attachment J, Raney Report, p. 21-22; Doc. 1-2, West C-D Cells Video, GB249 at 8:10-8:40; Attachment G, Gumpf Depo., p. 12). He chose not to.

Defendants make assertions about what each Defendant saw and knew and attempt to provide an explanation for the basis for their actions. However, Defendants rely only on their interpretation of the video. (Doc. 46, PageID## 597-600). Because this is again a question of

whose inferences to draw from the video, those inferences must be taken in Plaintiff's favor. However, while Defendants argue that Defendants Hobbs, Meyers, Watkins, and Gumpf did not have an obligation to act because there was no use of force so they could not have perceived one, Defendants say little about the opportunity to intervene. The only argument made that any of the Defendants did not have sufficient time to intervene is that "the entire encounter was less than 40 seconds from start to finish." (Doc. 46, PageID# 600). This is unpersuasive. Forty seconds is plenty of time to intervene when the other Defendants are so close. The cases where an incident has occurred too quickly for intervention have concerned much shorter lengths of time. *Ontha*, 222 F.App'x at 506 (six or seven seconds). The video shows that Defendant Grant's unreasonable use of force lasted approximately 27 seconds. (Doc. 1-2, West Hall Video, GB251 at 8:12-8:39). This is very similar to *Goodwin*, where officers who were present for a 26 second tasing had the opportunity to intervene. 781 F.3d at 328-329. Even if Defendants were to argue that Defendant Grant's use of force were shorter, if Plaintiff's inference regarding the time is reasonable, summary judgment should be denied. *Guglielmo*, 387 F.Supp.3d at 821-22 (defendants argued incident lasted only 4 or 5 seconds, while plaintiff argued it last up to 49 seconds, and since plaintiff's analysis was not unreasonable, summary judgment was denied).

Sheriff Tharp testified that if Defendants Hobbs, Meyers, Watkins, and Gumpf perceived the use of force, that they should have intervened. (Attachment A, Sheriff Tharp Depo., p. 55). Plaintiff's expert agrees. Mr. Raney opined that Defendants Hobbs, Meyers, Watkins, and Gumpf all violated Lucas County policy, as well as Ohio jail standards and contemporary correctional practices when they failed to intervene. (Attachment J, Raney Report, p. 21-22). Because Defendants Hobbs, Meyers, Watkins, and Gumpf all perceived Defendant Grant's unreasonable use of force when they were in the immediate vicinity of it, and it continued for 27

seconds, giving them an opportunity to intervene, but they failed to do so, summary judgment must be denied.

### E. Contested Facts Preclude Summary Judgment for Defendants on State law Claims

Ohio law does not immunize "acts or omissions [done] with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. § 2744.03(A)(6)(b). Given that material facts are in dispute on the Section 1983 claims and that those same facts would establish recklessness and defeat immunity under R.C. § 2744.03(A)(6)(b),[2] summary judgment should be denied to the Defendant officers on this claim as well. *See Hopper v. Plummer,* 887 F.3d 744, 759-760 (6th Cir. 2018) (summary judgment on state law wrongful death claim denied when genuine issues of material fact were present on excessive force claim).

## IV. CONCLUSION

Defendants Hobbs, Grant, Meyers, Watkins, and Gumpf have not met their burden to show that there is no genuine dispute of material fact. Because there are genuine disputes of material fact regarding all of the claims, Summary Judgment should be denied in its entirety.

Respectfully submitted,

/s/Alphonse A. Gerhardstein
Alphonse A. Gerhardstein (0032053)
Attorney for Plaintiff
Jennifer L. Branch (0038893)
Trial Attorney for Plaintiff
M. Caroline Hyatt (0093323)
Attorney for Plaintiff

Robert W. Bohmer (0063419)
RUPP, WESCHE, HAGANS,
BOHMER, NEWTON &
HARMON, LLP
302 N. Defiance Street
P.O. Box 178
Archbold, Ohio 43502

---

[2] R.C. § 2744.03(A)(6)(b) provides immunity to an employee of a political subdivision for any act or omission in connection with a governmental or proprietary function unless such acts or omissions "were with malicious purpose, in bad faith, or in a wanton or reckless manner." Under Ohio law, "wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result," while "reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St. 3d, 983 N.E. 2d 266, ¶¶ 33-34 (2012). The issue of recklessness is normally a question of fact to be determined by the jury. *Chesher v. Neyer*, 477 F.3d 784, 800 (6th Cir. 2007).

Gerhardstein & Branch Co. LPA
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
Tel (513) 621-9100
Fax (513) 345-5543
agerhardstein@gbfirm.com
jbranch@gbfirm.com
chyatt@gbfirm.com

Phone:  419.445-8815
Fax:     419.445-1080
robert@northwestohiolaw.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that the foregoing memorandum in opposition to summary judgment does not exceed twenty (20) pages in length and is within the limitations of a standard track matter.

s/ Alphonse A. Gerhardstein
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

s/ Alphonse A. Gerhardstein
Attorney for Plaintiff