UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Timothy McGovern,  Case No. 3:18-cv-2506

    Plaintiff,

v.  MEMORANDUM OPINION
AND ORDER

Lucas County, Ohio, *et al.*,

    Defendants.

## I. INTRODUCTION

Plaintiff Timothy McGovern filed suit on October 30, 2018, alleging claims for the violation of his rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as state law claims for assault, battery, and negligence, against Defendants Lucas County, Ohio, and the Lucas County Board of Commissioners; Lamonte Hobbs, Nate Meyers, Matthew Grant, Oliver Watkins, Mark Gumpf,[1] and John Tharp. (Doc. No. 4). McGovern sued the individual Defendants as individuals and in their official capacities as Lucas County employees.

McGovern seeks summary judgment on his claims against Hobbs for excessive use of force and battery, arguing the doctrine of collateral estoppel establishes the facts necessary to resolve those claims in his favor. (Doc. No. 37). Hobbs filed a brief in opposition to McGovern's motion, (Doc. No. 44), and McGovern filed a brief in reply. (Doc. No. 45).

---

[1] While McGovern's pleadings spell this defendant's name as "Grumpf," the record clarifies that his name is spelled "Gumpf," and I will use that spelling throughout this Opinion. (*See* Doc. No. 37-1 at 120).

Subsequently, Hobbs, Meyers, Grant, Watkins, and Gumpf (the "Defendant Officers") filed a motion for summary judgment concerning McGovern's claims against them on the basis of qualified and statutory immunity. (Doc. No. 46). McGovern filed a brief in opposition, (Doc. No. 60), and the Defendant Officers filed a brief in reply. (Doc. No. 62).

For the reasons stated below, I grant both motions in part and deny them in part.

## II.     BACKGROUND

On November 10, 2017, McGovern was pulled over by a patrol officer with the Toledo Police Department while on his way home from a bar. (Doc. No. 60-2 at 7-8). The officer told McGovern he had been speeding but then saw an open can of beer in the car and instructed McGovern to step outside. McGovern asserts he was not intoxicated and had not been drinking from the can, which his nephew left in McGovern's car. (*Id.* at 10-12). While McGovern initially cooperated with the officer's instructions to step out of the car, he became upset with the way he perceived the officer treating him and with the officer's decision to arrest him, and he began swearing at the officer. (*Id.* at 14-15). At one point, McGovern concedes, he told officers he was going to head butt them. (*Id.* at 17-18).

McGovern was booked into the Lucas County Corrections Center ("LCCC") on charges of operating a vehicle while intoxicated, menacing, and reckless operation of a motor vehicle. (Doc. No. 37-1 at 40, 49). Defendants contend McGovern was uncooperative with officers when he arrived at the jail and, therefore, was not photographed or given documentation which would permit him to make a phone call before he was placed in a holding cell with a number of other inmates. For his part, McGovern denies being belligerent or threatening officers after arriving at the jail. (Doc. No. 60-2 at 26).

The incident at issue in this case was recorded on LCCC cameras and those recordings are part of the record. (*See* Doc. No. 7). Around 5:30 a.m., Officer Hobbs brought another inmate to

the holding cell. McGovern, who was laying down when the other inmate arrived outside of the holding cell, stood up and approached Hobbs, asking to make a phone call. (*Id.*, C-01-48 Bkg West C-D (GB249), beginning at 6:55). Hobbs told McGovern to use the phone on the wall in the cell, and McGovern responded that he did not have a PIN he needed to call outside of the jail. (Doc. No. 60-2 at 29-30).

After some back and forth, McGovern raised his middle finger at Hobbs, said "f--- you," and turned to walk away. (*Id.* at 30). Hobbs asserts McGovern also directed a racial slur at him, though McGovern denies it. (Doc. No. 60-3 at 44-45; Doc. No. 60-2 at 30-31). Hobbs, who at this point was slowly closing the cell door, yanked the door back open, took a few steps into the cell, and grabbed McGovern by the back of his jumpsuit. (Doc. No. 7, GB249 at 7:59-8:00). Hobbs contends he was concerned McGovern would cause a disruption with the other inmates in the holding cell and intended to move McGovern into a single holding cell on the opposite side of the hall. (Doc. No. 60-3 at 35-37). Hobbs concedes he did not give McGovern any verbal commands, and that McGovern did not threaten him before he grabbed McGovern. (Doc. No. 60-3 at 39).

As Hobbs pulled McGovern back toward the door, McGovern fell, and Hobbs fell on top of him. (Doc. No. 7, GB249 at 8:00-8:03). Hobbs had his left forearm across McGovern's upper chest and neck while moving him from the doorway of the cell into the hallway. (*Id.* at 8:03-8:11). Four other corrections officers responded, and two of the officers (Meyers and Grant) assisted Hobbs in moving McGovern further into the hallway. (*Id.*; Doc. No. 60-3 at 55-56). Grant kneeled on McGovern's upper back and head while Meyers placed him in handcuffs. (Doc. No. 7, C-01-50, Bkg West Hall (GB251) at 8:12-8:37; Doc. No. 60-3 at 54-57). McGovern suffered bruises and cuts to his forehead and elbow, and he later was diagnosed with post-concussion syndrome. (Doc. No. 60-2 at 34-35; Doc. No. 60-9 at 158). Once McGovern was handcuffed, officers moved him to a single cell across the hall.

Hobbs wrote a report summarizing the incident when he arrived back at LCCC for his next shift.  (Doc. No. 37-2).  An internal investigation led to a referral to the Lucas County Prosecutor's Office, which presented the case to a grand jury.  Hobbs was indicted on November 21, 2017, and charged with one count of assault in violation of Ohio Revised Code § 2903.13(A), a first-degree misdemeanor.  (Doc. No. 44-1 at 3).  Hobbs waived his right to a jury trial and, on June 28, 2018, was found guilty following a three-day bench trial before Lucas County Court of Common Pleas Judge Stacy Cook.  Hobbs was sentenced to 180 days in jail, which was suspended pending Hobbs' completion of one year of probation and 30 hours of community service.  (*Id.*).

Hobbs filed a notice of appeal but did not request that his sentence be stayed pending appeal.  (*Id.*).  He received a successful early termination of his probation pursuant to the recommendation of the Lucas County Adult Probation Department.  (*Id.* at 4).  The Sixth District Court of Appeals dismissed Hobbs' appeal as moot, because he had voluntarily completed his sentence and had not identified a collateral sanction or loss of civil rights associated with his conviction.  (*Id.* at 7-8).

### III.  STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor.  *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).  A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law.  *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

When facts relevant to a summary judgment motion have been recorded on a video, those facts should be viewed in the light depicted by the video if a reasonable juror could view those facts in only one way. *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). If "facts shown in videos can be interpreted in multiple ways or if videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Latits*, 878 F.3d at 547 (citing *Godowa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015)).

## IV. ANALYSIS

### A. COLLATERAL ESTOPPEL

McGovern argues the doctrine of collateral estoppel applies to conclusively establish certain facts and issues litigated during Hobbs' criminal proceedings and that, once those facts and issues are established through the use of collateral estoppel, he is entitled to summary judgment on his battery and Fourth and Fourteenth Amendment excessive use of force claims against Hobbs.

Hobbs argues (1) McGovern is not entitled to summary judgment because the state court proceedings did not involve issues relevant to his qualified and statutory immunity claims; (2) applying the doctrine of collateral estoppel would violate his due process rights; and (3) McGovern has failed to specifically pled an excessive force claim under the Fourth and Fourteenth Amendments against Hobbs. (Doc. No. 44 at 1-2).

I will consider Hobbs' last argument first. He asserts I should deny McGovern's motion for summary judgment regarding a claim that Hobbs used excessive force because the Amended Complaint does not contain a "direct claim under § 1983 premised on the conduct of Hobbs stemming from his physical contact with McGovern." (*Id.* at 17). Hobbs, however, reads the Amended Complaint too narrowly.

The Sixth Circuit requires § 1983 plaintiffs to provide enough details about a claimed constitutional violation to give a defendant sufficient notice of the claim and to allow a court to

5

make a qualified-immunity determination at the pleading stage. *Wright v. Leis*, 335 F. App'x 552, 555 (6th Cir. 2009) (citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). McGovern meets both requirements.

He alleged Hobbs "grabbed him by the back of his collar and violently jerked him backwards and down to the ground" while McGovern was walking away from Hobbs. (Doc. No. 4 at 4-5). He alleged there was "no need" for Hobbs to use force on him. (*Id.* at 6). He also alleged that all Defendants (including, implicitly, Hobbs), "acted recklessly, wantonly, willfully, knowingly, intentionally[,] and with deliberate indifference to the safety and rights of Timothy McGovern . . . [and] deprived [him] of his rights, privileges, and immunities secured to him by the United States Constitution, including the prohibition on excessive force and due process as contained in the Fourth and Fourteenth Amendments." (*Id.* at 8). These allegations are sufficient to state a § 1983 claim for Hobbs' initial use of force, even if the allegations are not solely contained in a single numbered paragraph. *See Wright*, 335 F. App'x at 555 (citing several different paragraphs of plaintiff's complaint in support of court's conclusion the complaint went "beyond generalities and supplie[d] details about the alleged violation").

That leaves the questions of whether collateral estoppel applies, whether it entitles McGovern to summary judgment on some of his claims, and whether, as Hobbs asserts, it would violate Hobbs' due-process rights to grant McGovern summary judgment through the use of the collateral estoppel doctrine.

McGovern seeks to use a state court proceeding to estop Hobbs from relitigating certain facts, so I am required to give that proceedings the same effect it would have in an Ohio court. *5455 Clarkins Drive, Inc. v. Poole*, 384 F. App'x 458, 464 (6th Cir. 2010) (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). "Collateral estoppel precludes the relitigation of an issue that has been 'actually and necessarily litigated and determined in a prior action.'" *Krahn v. Kinney*, 538 N.E.2d 1058, 1062

(Ohio 1989) (quoting *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 981 (Ohio 1983)); *see also Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 592 (Ohio 2010). "A criminal conviction is conclusive proof and operates as an estoppel on defendants as to the facts supporting the conviction in a subsequent civil action." *Wloszek v. Weston, Hurd, Fallon, Paisley & Howley, LLP*, 2004-Ohio-146, 2004 WL 64947, at *5 (Ohio Ct. App. Jan. 15, 2004) (citing *Local 167 of Int'l Bhd. of Teamsters, Chauffeurs, Stablemen & Helpers of Am. v. United States,* 291 U.S. 293, 298-99 (1934)).

"Collaterally estopping a party from relitigating an issue previously decided against it violates due process where it could not be foreseen that the issue would subsequently be utilized collaterally, and where the party had little knowledge or incentive to litigate fully and vigorously in the first action due to the procedural and/or factual circumstances presented therein." *Goodson*, 443 N.E.2d at 986. Ohio courts determine "the preclusive effects of a criminal proceeding on a subsequent civil action by asking whether the 'qualitative differences' between those proceedings affected the litigant's willingness or ability to pursue the claim." *Anderson v. City of Blue Ash*, 798 F.3d 338, 353 (6th Cir. 2015).

In McGovern's view, the state court proceedings actually and directly litigated the following facts: (a) Hobbs acted, while in the scope of his employment, with knowledge and purpose in touching McGovern; (b) McGovern was harmed by Hobbs; and (c) Hobbs did not act in defense of self or others. (Doc. No. 37 at 8, 12, 14). These facts, McGovern continues, conclusively establish that Hobbs is civilly liable for battery and for the excessive use of force in violation of McGovern's constitutional rights. (*Id.* at 10-14).

Hobbs does not appear to dispute that the state court proceedings establish "some of the basic facts underling the jail incident." (Doc. No. 44 at 10). He contends, however, that those facts are not dispositive of McGovern's claims because he did not have the opportunity to present his civil defenses of qualified and statutory immunity during his criminal trial. (*Id.*).

7

I conclude the doctrine of collateral estoppel applies to bar Hobbs from relitigating the facts necessary to establish the elements of the offense of which he was convicted:

- Hobbs "had the purposeful intent to cause [himself] to have physical contact with [McGovern,] yanking him back through the door by the collar and wrapping [his] arm around [McGovern's] upper torso, clavicle area";

- McGovern was under Hobbs' control when he hit the ground; and

- Hobbs "did knowingly cause or attempt to cause physical harm" to McGovern, and he did not act in defense of self or others, or to prevent McGovern from destroying property.

(Doc. No. 37-1 at 266-67).

The question of whether these indisputable facts establish liability, however, is one best answered along with Defendants' summary judgment motion.

### B.  QUALIFIED AND STATUTORY IMMUNITY

The doctrine of qualified immunity protects a government official performing a discretionary function from being held liable in a civil suit for damages if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a defendant's assertion of qualified immunity must determine: (1) whether the plaintiff has shown the defendant's actions violated the plaintiff's constitutional rights; and (2) whether the constitutional right at issue in the case was "'clearly established'" at the time the defendant acted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

For purposes of the qualified-immunity inquiry, a constitutional right is clearly established if it is "sufficiently clear[, such] that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and internal quotation marks omitted) (second alteration in original).

8

The Due Process Clause of the Fourteenth Amendment "'protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (quoting *Graham v. Connor,* 490 U.S. 386, 395 n.10 (1989)). A jail officer may violate a pretrial detainee's right to be free from the use of excessive force if the officer's "actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or [if] the actions 'appear excessive in relation to that purpose.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)).

A pretrial-detainee plaintiff like McGovern "must show only that the force purposely or knowingly used against him was objectively unreasonable," in light of the "facts and circumstances of each particular case." *Kingsley*, 576 U.S. at 396-97 (citation omitted). Some of the relevant factors in this inquiry include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397.

The Defendant Officers also assert they are immune from suit under Ohio law. Ohio generally provides state employees with immunity from civil liability unless a statutory exception applies. Ohio Rev. Code § 2744.03(A)(6). The exception relevant to this case involves the determination of whether "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b).

### 1. The Initial Contact

As I discussed above, McGovern claims Hobbs violated his Fourth and Fourteenth Amendment rights by using excessive force to remove him from the holding cell in response to his use of profanity and an obscene gesture, and by failing to intervene in Grant's use of excessive force. McGovern also alleges Hobbs committed the state law torts of assault and battery and negligence.

9

Viewing the evidence in the light most favorable to McGovern, as I am required to while assessing Defendants' motion for summary judgment, I conclude Hobbs did not engage in the objectively reasonable use of force when he initiated an altercation out of apparent frustration with McGovern's "verbal outburst[]" and demands to use the phone, and that McGovern's "constitutional right to be free from such treatment was clearly established . . . ." *Morabito v. Holmes*, 628 F. App'x 353, 358 (6th Cir. 2015). Therefore, Hobbs fails to show he is entitled to qualified immunity concerning McGovern's use-of-force claim.

Hobbs first argues his conduct was justified by McGovern's behavior prior to the incident. (*See, e.g.,* Doc. No. 46 at 23-24 ("McGovern's admittedly uncooperative behavior during his stay in booking and the charges on which he was brought in on (which included menacing police officers) are considerations for this Court, even though they were not essential to the state court's conviction.")). This argument falls short.

The Sixth Circuit applies "a 'segmented approach' to excessive-force claims, in which [a court] 'carve[s] up' the events surrounding the challenged police action and evaluate[s] the reasonableness of the force by looking only at the moments immediately preceding the officer's use of force." *Greathouse v. Couch*, 433 F. App'x 370, 372 (6th Cir. 2011) (citing *Claybrook v. Birchwell,* 274 F.3d 1098, 1103-04 (6th Cir. 2001) and *Dickerson v. McClellan,* 101 F.3d 1151, 1160-62 (6th Cir. 1996)). To determine whether an officer's use of force violated a plaintiff's constitutional protection against the use of excessive force, the court considers only the "'reasonableness at the moment' force is used, 'judged from the perspective of a reasonable officer on the scene.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (quoting *Graham*, 490 U.S. at 396).

Thus, the behavior that is relevant is not what McGovern did when he was being handcuffed and placed into a police car, or what he said while being processed upon his arrival at the jail. What is relevant is the conversation between McGovern and Hobbs, which was not loud or aggressive

10

enough to draw the attention of any other inmate or corrections officer, followed by what Hobbs describes as McGovern's "verbal hostility and disrespectful gesture." (Doc. No. 44 at 13).

Hobbs also attempts to gain traction on the other end of the spectrum, arguing his use of force was limited to "grabb[ing] the back of McGovern's jumpsuit at the collar." (Doc. No. 62 at 11). This argument fares no better. The video clearly shows Hobbs did more than simply grab McGovern's jumpsuit and then fall to the ground. (*Cf id.*). Instead, it shows Hobbs grab McGovern's clothes, squat down for leverage, and then forcefully jerk McGovern backwards by his clothing. (Doc. No. 7, GB249 at 8:00-8:03). Further, though Hobbs acknowledges he fell while attempting to remove McGovern from the cell, the video shows he fell because he yanked McGovern into his leg. (*Id.* at 8:01-8:02).

Further, while Hobbs is correct that a plaintiff must show more than *de minimis* force in order to violate the Fourteenth Amendment's substantive due process protections, the record evidence conclusively demonstrates Hobbs' conduct surpassed the *de-minimis* threshold. *See Harris*, 550 U.S. at 380-81 (facts recorded on video must be viewed "in the light depicted by the videotape"). The video recordings plainly show Hobbs yanking McGovern[2] backwards, off of his feet, and onto the ground. (*See* Doc. No. 7, GB249 at 7:59-8:00). This was no slap on the back that "'didn't hurt or nothing.'" *Leary*, 528 F.3d at 443. McGovern was walking in the opposite direction when Hobbs grabbed him, and Hobbs used enough force to drag McGovern back several feet. Further, the evidence shows McGovern suffered "objectively verifiable injur[ies]" from Hobbs' conduct.[3] *Id.* Hobbs' characterization of his level of force as "*de minimis*," and therefore objectively

---

[2] Medical records indicate McGovern weighed 165 pounds around the time of the incident. (Doc. No. 60-9 at 157).

[3] Hobbs contends the testimony from his criminal trial and the video recordings establish McGovern did not suffer any injuries "resulting from a collar-grab." (Doc. No. 44 at 13-14). Hobbs does not expand on this contention, but the video refutes it. Hobbs caused McGovern to

11

reasonable, is unconvincing. *See Morabito*, 628 F. App'x at 357 ("'[W]e consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence.'") (quoting *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012) (further citation omitted)).

Hobbs also claims he acted because he "perceived a threat to the tank stability in the face of McGovern's hostile attitude, gesturing, and communication," in part because there were "at least two other inmates active in the tank at the time." (Doc. No. 62 at 13). While Hobbs implies McGovern was responsible for these other inmates being active, the video makes clear McGovern was lying on his mat until a nurse came around to the cell to speak with him, and that Hobbs himself had just arrived at the holding cell with another inmate who stood talking at the open door to the cell while waiting for another officer to bring a blanket and shoes. (Doc. No. 7, GB249 at 4:00-7:23).

Further, while "an officer's explanation of his motivations [may] inform a court's understanding about what an objectively reasonable officer would have done under such circumstances," *Jones v. City of Cincinnati*, 736 F.3d 688, 696 (6th Cir. 2012), the incident as depicted by the video demonstrates Hobbs used excessive force to remove McGovern from the holding cell. *See Latits*, 878 F.3d at 549 (citing *Harris*, 550 U.S. at 381). McGovern was not acting aggressively toward other inmates, and the other inmates do not react to the conversation in the cell doorway until after Hobbs yanked McGovern backwards and onto the floor. (Doc. No. 7, GB249 at 7:59-8:02). In fact, no other inmate moved toward the hallway until after the cell door was closed. (*Id.* at 8:22).

The record evidence demonstrates Hobbs used a much greater degree of force than was necessary to remove McGovern, who was not actively resisting, from the holding cell. *Kingsley*, 576

---

fall on the cement floor on his right arm (the arm which on which McGovern suffered cuts and bruises) and then landed on top of him.

12

U.S. at 397. Hobbs made no apparent effort to limit the amount of force he used to accomplish his intention of removing McGovern from the holding cell, and the video demonstrates Hobbs did not reasonably or accurately perceive the alleged threat McGovern posed or the apparent severity of any potential security issue. *Id.*

Hobbs' conduct, viewed in the light most favorable to McGovern, was not an objectively reasonable use of force, and McGovern had a clearly established constitutional right to be free from Hobbs' objectively unreasonable conduct. *Morabito*, 628 F. App'x at 358. Therefore, I conclude Hobbs is not entitled to qualified immunity with respect to McGovern's § 1983 claim arising from that initial physical contact.

Moreover, because Hobbs is collaterally estopped from relitigating the question of whether he intended to have physical contact with McGovern while knowingly causing or attempting to cause physical harm to McGovern, (Doc. No. 37-1 at 266-67), I conclude McGovern is entitled to summary judgment on his claim that Hobbs violated McGovern's Fourteenth Amendment protection "from the use of excessive force that amounts to punishment." *Leary*, 528 F.3d at 443.

I also conclude Hobbs is not entitled to state-law immunity on McGovern's battery and negligence claims. Section 2744.03(A)(6)(b) provides a state employee is not immune from liability if the employee acted in a wanton or reckless manner. An individual engages in wanton misconduct by failing "to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result," or by being aware of a risk but "not trying to avoid it and . . . [being] indifferent to whether harm results." *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012) (citations omitted). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or *obvious* risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Goodwin v. City of Painesville*, 781 F.3d 314, 334 (6th Cir. 2015) (quoting *Anderson*, 983 N.E.2d at 273) (emphasis in *Goodwin*).

Hobbs' conduct, established as indisputable by collateral estoppel, involved at least an unreasonable indifference to an obvious risk of harm to another. Hobbs' recklessness means he is not entitled to statutory immunity under Ohio law. Therefore, McGovern is entitled to summary judgment on his battery and negligence /recklessness claims against Hobbs. *See David v. Matter*, 96 N.E.3d 1012, 1018 (Ohio Ct. App. 2017) (A plaintiff may pursue a negligent tort claim against a state-employee defendant by showing "a higher level of intent than what would normally be required because of the status of the defendant.").

Lastly, for the reasons discussed in the next section, I conclude Hobbs is entitled to summary judgment on McGovern's failure-to-intervene claim.

### 2. Handcuffing

McGovern alleges: (1) Grant used excessive force when he used his knee and hands to push McGovern's head into the floor; and (2) that Hobbs, Meyers, Watkins, and Gumpf failed to intervene in Grant's use of excessive force. (Doc. No. 4 at 5, 8).

An officer may be liable for the use of excessive force, even if the officer did not actually use excessive force, if the officer failed to intervene in another officer's use of excessive force and "'(1) the [first] officer observed or had reason to know that excessive force would be or was being used; and (2) the [first] officer had both the opportunity and the means to prevent the harm from occurring.'" *Goodwin*, 781 F.3d at 328 (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) and citing *Durham v. Nu'Man*, 97 F.3d 862, 866-67 (6th Cir. 1996)).

As I noted above, Sixth Circuit precedent requires that I view an excessive force claim in segments and focus solely on what immediately preceded an officer's use of force. *See Reich v. City of Elizabethtown, Ky.*, 945 F.3d 968, 978 (6th Cir. 2019) ("This approach requires us to evaluate the use of force by focusing on the split-second judgment made immediately before the officer used

allegedly excessive force, not on the poor planning or bad tactics that might have created the circumstances that led to the use of force.") (citations and internal quotation marks omitted).

Through this lens, the record evidence demonstrates Grant did not use excessive force while assisting Meyers in handcuffing McGovern, and thus the other Defendant Officers did not violate any duty to intervene, even when viewing the evidence in the light most favorable to McGovern.

Meyers, Watkins, Grant, and Gumpf arrived at the holding cell within a few seconds of the time Hobbs took McGovern to the floor. (Doc. No. 7, GB249 at 8:05). Grant put his knee on McGovern's upper back and shoulders while Meyers began handcuffing him. At Watkins' apparent direction, Meyers and Grant moved McGovern further into the hallway so Watkins could close the cell door. (*Id.* at 8:05-8:21). Grant pushed McGovern's head down while Meyers continued handcuffing him. Once McGovern was handcuffed, Grant and Meyers lifted him up and walked him into the cell across the hall. (*Id.* at 8:21-8:39).

McGovern contends Grant violated his rights by using force because he was not resisting Meyers' attempts to handcuff him. (Doc. No. 60 at 16-18). The cases on which McGovern relies, however, are not on point. Those cases involve the Fourth Amendment right of a citizen to be free from the use of excessive force while being arrested. *See Crawford v. Geiger*, 656 F. App'x 190, 204 (6th Cir. 2016); *Wysong v. City of Heath*, 260 F. App'x 848, 854-55 (6th Cir. 2008); *Griffth v. Coburn*, 473 F.3d 650, 658-60 (6th Cir. 2007); and *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 896-902 (6th Cir. 2004).

McGovern's claim, by contrast, involves his Fourteenth Amendment due process right to be free from an objectively unreasonable use of force. This claim involves an inquiry into whether the officer's actions were "rationally related to a legitimate nonpunitive governmental purpose or . . . excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (citation and internal quotation marks omitted).

15

The video demonstrates Grant's actions were rationally related to a legitimate nonpunitive government purpose (gaining control over a jail detainee who was involved in an altercation with another corrections officer) and that Grant's use of force was not excessive in relations to that purpose. The recordings reveal Grant began by placing his knee on McGovern's upper back before decreasing the apparent amount of force he was using, moving to place two hands, and then one, on McGovern's head. (Doc. No. 7, GB249 at 8:11-8:39, GB251 at 8:12-8:39). While clearly established law prohibits an officer from placing weight on the body of a detainee who was handcuffed and not resisting, *Hopper v. Plummer*, 887 F.3d 744, 754 (6th Cir. 2018), federal law does not contain a similar prohibition during the actual act of handcuffing.

Moreover, the relevant backdrop for Grant's actions is what he observed when he arrived at the cell doorway – McGovern and three other officers on the ground in the open doorway of a cell containing roughly 10-12 other inmates. Grant was confronted with the circumstances which Hobbs claims he acted to prevent: a physical altercation with an inmate in close proximity to a large number of intoxicated and potentially volatile inmates. The fact that Hobbs created those circumstances is not relevant to the analysis of this portion of McGovern's claim. *Reich*, 945 F.3d at 978.

McGovern also argues this incident "is very similar to *Goodwin*, where officers who were present for a 26 second tasing had the opportunity to intervene." (Doc. No. 60 at 21). McGovern fails to acknowledge, however, that Grant's use of force was not continuous but occurred in two separate parts. (Doc. No. 7, GB249 at 8:11-8:39, GB251 at 8:12-8:39). Grant first put his knee on McGovern's upper back while McGovern was lying in the open doorway. Grant removed his knee and stood up to assist Meyers and Hobbs in moving McGovern out of the doorway. As Watkins closed the door, Grant used his hands to push McGovern's head down against the floor and held it there while Meyers handcuffed McGovern.

16

McGovern also does not acknowledge that the video recording shows Grant decreased the level of force he used as the incident progressed in response to the circumstances. Initially, Grant used his knee (*id.*, GB249 at 8:11-8:18), then two hands (*id.*, GB249 at 8:21-8:27, GB251 at 8:21-8:28, and finally one hand before releasing his pressure on McGovern's head once Meyers had both of McGovern's hands restrained. (*Id.*, GB249 at 8:27-8:38, GB251 at 8:28-8:39).

Viewing the evidence in the light most favorable to McGovern, I conclude Grant is entitled to qualified immunity because a reasonable jury would conclude he did not use force "that amounts to punishment." *Leary*, 528 F.3d at 443. Because Grant did not use excessive force, Gumpf, Hobbs, Meyers, and Watkins are entitled to summary judgment on McGovern's failure-to-intervene claim.

Lastly, I also conclude Grant, Meyers, Watkins, and Gumpf are entitled to the application of statutory immunity under Ohio Revised Code § 2744.03(A)(6). The evidence, viewed in the light most favorable to McGovern, does not show those defendants failed to exercise any care or disregarded an obvious and unreasonable risk of harm. Therefore, McGovern has not met his burden of showing those defendants acted with a malicious purpose or in a wanton or reckless manner.

## V. CONCLUSION

For the reasons stated above, I conclude McGovern is entitled to summary judgment on his § 1983 claim for the use of excessive force, as well as his battery and negligence/recklessness claims, against Hobbs.

I conclude the Defendant Officers are entitled to summary judgment on McGovern's excessive force claim against Grant, his failure-to-intervene claims against Gumpf, Hobbs, Meyers, and Watkins, and his state-law claims against Grant, Gumpf, Meyers, and Watkins.

Therefore, I grant in part McGovern's motion for summary judgment, (Doc. No. 37), and deny it in part. I grant in part the Defendant Officers' motion for summary judgment, (Doc. No. 46), and deny it in part.

So Ordered.

                                          s/ Jeffrey J. Helmick
                                          United States District Judge